359 So.2d 996 (1977)
SUCCESSION of Rosario GUERCIO.
No. 8379.
Court of Appeal of Louisiana, Fourth Circuit.
October 12, 1977.
Order Granting Rehearing November 15, 1977.
On Rehearing May 10, 1978.
Rehearing Denied June 13, 1978.
*997 Krieger & Krieger, I. Jay Krieger, New Orleans, for Vincent A. Guercio, proponent-appellee.
McGlinchey, Stafford, Mintz & Hoffman, Graham Stafford, New Orleans, for Mrs. Rosario Guercio, proponent-appellee.
John J. Cummings, III and Gregory F. Gambel, New Orleans, for Mrs. Mike Guercio Montalbano, Mrs. Nicholas Guercio Montalbano and Mrs. James Guercio Rutter, opponents-appellants.
Before SAMUEL, LEMMON and BEER, JJ.
LEMMON, Judge.
This is a succession proceeding. The decedent, Rosario Guercio, died intestate and was survived by his second wife, Mary, and four children of his first marriage. The only son, Vincent, qualified as administrator of the succession.
Several oppositions and motions filed by the decedent's three daughters were consolidated for hearing in the trial court. This appeal by the daughters questions those portions of the judgment on the rule which (1) homologated the administrator's account that listed 685 shares of stock in R. Guercio & Son, Inc. as community property; (2) denied the daughters' claim for collation of an alleged gift to Vincent of an interest in a business partnership; (3) denied the daughters' claim for an interest in the partnership assets (and ultimately in a successor corporation's stock), allegedly inherited in the succession of their mother; and (4) awarded the administrator a fee.[1]
In 1930 Vincent Guercio went to work with decedent in the wholesale producebusiness for a small salary and a promise of being made a partner. Both worked long hours, drawing small salaries and allowing the earnings to be reinvested in the business.
In 1935 Mrs. Leah Guercio, decedent's first wife and the mother of his four children, died intestate. Listed under community property in the succession proceeding were "(s)tocks and equipment, business. . . inventory, perishable produce, fixtures" of the business enterprise, valued at $1,139.42, and "(g)oing concern value of business", estimated at $500.00. The husband was placed in possession of a one-half undivided interest in all the community property, and the children were placed in possession of the other one-half interest, subject to their father's usufruct.
On January 2, 1940 decedent and Vincent entered into a written partnership agreement. The contract recognized that Vincent had "for a period of many years contributed and invested in the business services, skill, industry, credit, good will and accumulated financial interests reciprocally and in common with Rosario Guercio, in the present business and assets in the going concern value thereof" and that the parties wished to define their respective interests in the business. The contract further declared that the parties accepted the December 31, 1939 appraisement of the total value of the business and "will become as of the date hereof and remain partners". The parties agreed to contribute the "capital from the business heretofore existing between the parties" (stated to be $8,477.60) and to share profits and losses in the proportion of 662/3% to Rosario and 331/3% to Vincent.
In April, 1942 decedent remarried, thus terminating his usufruct over the business *998 enterprise and other community property. As of December 31, 1941 decedent's share of the partnership capital account was $7,167.34.
In 1944 decedent and Vincent amended their partnership agreement to change the ownership of the capital assets and the distribution of profits and losses to 51% and 49% respectively. The parties stated that the amendment was effected because Vincent had furnished "industry, time, skill, good will, business services, etc." in excess of that originally contemplated and decedent had not been able to furnish these to the extent originally contemplated. At trial, however, Vincent testified that he also paid a sum of money as consideration for transfer of the additional interest.[2]
In 1954 the corporation R. Guercio & Son, Inc. was chartered, and 1,400 shares of stock were issued. Some shares were issued for cash, but most of the shares (1,375) were issued in exchange for the net assets of the partnership, which were valued in the corporation's report at $137,500.00. Decedent received 714 shares, but later donated 29 to his children, leaving a total of 685 shares at his death.
Decedent died intestate in 1972. There were no children born of his second marriage.
In the succession proceeding at issue in this appeal the amended detailed descriptive list itemized the 685 shares of stock as belonging to the community, these shares being valued at $97,955.00. The three daughters opposed the classification of the stock as community property and urged opposition to many other items listed in or omitted from the proposed tableau of distribution. This appeal involves the four issues stated above which were still disputed after resolution of many other issues in the preargument conference in this court.
Decedent's Usufruct Upon Death of First Wife
The daughters contend that the children inherited, upon the death of their mother in 1935, her one-half interest in the community, including one-half of their father's proportionate interest in the partnership, subject to his usufruct. They further contend that they attained perfect ownership of this interest in the partnership when the usufruct terminated upon their father's remarriage and were entitled, when the partnership assets were transferred in exchange for corporation stock, to a proportionate share of the stock.
In 1935 the business enterprise, whether a partnership or a sole proprietorship, consisted of corporeals, including merchandise, fixtures and equipment, and incorporeals, specifically good will.[3]
The usufruct of a business enterprise is an imperfect usufruct. Succ. of Trouilly, 52 La.Ann. 276, 26 So. 851 (1899); Succ. of Blancand, 48 La.Ann. 578, 19 So. 683 (1896); Yiannopoulos, 3 Louisiana Civil Law Treatise-Personal Servitudes, § 32 (1968). The obligation of the usufructuary is to return to the naked owners upon termination of the usufruct the value of the things as of the commencement of the usufruct. C.C. art. 538, 629 (see C.C. art. 549 before Act 103 of 1976); Yiannopoulos, supra.
Accordingly, as usufructuary, decedent was the owner of the various elements *999 of the business enterprise and was entitled to the profits of the business, but was obliged at the termination of the usufruct in 1942 to pay to the naked owners the 1935 value. We therefore hold that the children were not entitled to any ownership in the partnership or its net assets at the termination of the usufruct.
As to any claim of the naked owners for the 1935 value of the business enterprise, the administrator filed an exception of prescription in this court. There is no specific codal provision dealing with liberative prescription applicable to claims against the usufructuary for the value of things subject to an imperfect usufruct. This unenumerated personal action therefore prescribes in ten years. C.C. art. 3544; Cochran v. Violet, 38 La.Ann. 525 (La.1886); Yiannopoulos, supra, § 98.
We conclude that any claim against decedent as usufructuary, under the facts of this case, accrued in 1942 and was prescribed when the claim was first asserted in the opposition in 1974.
Collation
The three daughters contend that decedent made a donation inter vivos to Vincent of an interest in the partnership in 1940 and of an additional interest in 1944.
The record establishes without contradiction that prior to 1940 Vincent worked in the business on an undercompensated basis in anticipation of becoming a partner. Vincent so testified, and the contract of partnership executed by notarial act supports this testimony.[4] Furthermore, the 1944 amendment to the partnership contract states a legitimate business basis for the increase in Vincent's interest, and the record contains no contrary indication.
This record adequately supports the trial judge's findings that Vincent's interest in the partnership resulted from valid business transactions rather than from gifts subject to collation.
Community Property Status of Stock
The daughters contend that decedent's interest in the partnership, because it was acquired before his second marriage, was separate property, and that since the partnership's net assets were transferred for corporation stock, the stock was also separate property.
We disagree. While the decedent's interest in the partnership when he married his second wife in 1942 was entirely separate property, that interest increased substantially over the next 12 years because a substantial amount of partnership earnings (produced by his labor and constituting community property) were allowed to remain in the partnership.
At the time of decedent's second marriage in 1942, his proportionate share in the partnership capital account was $7,167.34. But when the corporation was chartered in 1954, decedent's proportionate interest in the partnership capital account was $70,685.37.[5] The parties stipulated that the increase between 1942 and 1954 was the result of reinvestment of partnership earnings into the partnership. These earnings after 1942, of course, were community property.
In Succ. of Hollier, 247 La. 384, 171 So.2d 656 (1965), after the Court of Appeal had held a party's interest in a new partnership to be a community property although the party's interest in the original partnership was separate property, the Supreme Court remanded for specific evidence as to whether the successive partnership interests were merely "transformations" [analogous to Kittredge v. Grau, 158 La. 154, 103 So. 723 (1925)], or whether the party "infused community funds into the partnerships during his second marriage". Implicit in this decision *1000 was the recognition that mere transformations from one business association to another during a marriage would not change property from separate to community, but that infusion of community funds into the original association (which was separate property) could effect some change.
In the present case the infusion of community funds into the partnership was stipulated, and the decedent acquired the shares of stock with the partnership assets, which consisted of both separate and community property. When the partnership assets were transformed into corporation stock, the stock acquired with separate assets (if identifiable) should remain separate property, and that acquired with community assets should remain community property.
The amount of separate property in the partnership capital account on June 30, 1954 is readily ascertainable. (The amount was $7,167.34, since there were no withdrawals from the capital account after 1942, and any reinvested "fruits" of this sum constituted community property). Inasmuch as decedent used this identifiable separate property to acquire part of the shares of stock, the number of shares of stock acquired with this identifiable separate property should be classified as separate property. At $100.00 per share 71.7 shares of stock were separate property at the time of acquisition in 1954.
Decedent, however, subsequently donated 29 shares to his children. Since we cannot presume decedent intended to donate either only separate or only community property, we treat the donated shares as constituting proportionate amounts of both. We accordingly reduce the initial 71.7 shares of separate property by 29/714, making a total of 68.8 shares of stock constituting separate property at the time of decedent's death.
Fee for Administrator
The daughters argue in brief that the administrator is not entitled to a fee because he agreed to serve without compensation. Since there is absolutely no evidence on this point, it is unnecessary to consider the validity of the argument.
Decree
It is ordered that Subdivision "j" of the judgment of the trial court be amended to declare that 616.2 shares of stock in R. Guercio & Son, Inc. were community property and 68.8 shares were separate property. As amended, the judgment is affirmed.
AMENDED AND AFFIRMED.

ORDER
The court has considered the application for rehearing filed by Mrs. Mary Carnesi Guercio, and
IT IS ORDERED that the application for rehearing be granted. The argument on rehearing shall be limited to the issue of whether 685 shares of stock in R. Guercio & Sons, Inc. owned by the decedent at the time of his death were community or separate property. The case is ordered to be submitted on briefs only on Friday, November 25, 1977, and the parties may file additional briefs on the above stated issue on or before submission.

ON REHEARING
We granted Mrs. Guercio's application for rehearing in order to reconsider our holding that some of the shares of stock were decedent's separate property.
Mrs. Guercio concedes that the decedent had a claim against the community assets for reimbursement in the sum of $7,167.34, which was the value of decedent's interest in the partnership at the time of his second marriage in 1942. She contends, however, that all of the shares of stock are community property because her husband's separate property (the interest in the partnership) on the date of her marriage became commingled over 12 years with community funds so that there was no separate property identifiable by the time the partnership assets were used to purchase the corporate stock in 1954.
The basic question is whether decedent had a claim for reimbursement from community *1001 assets or a claim to ownership of specific property.[1]
At the time of decedent's second marriage in 1942, his interest in the partnership business enterprise was his separate property. The partnership assets then consisted of the cash, inventory, equipment, good will, etc. of the business. After the marriage the inventory was sold to produce revenue for the partnership, and the replacement stock was purchased with the funds generated by sales (decedent's share of which is community property). Trucks and other supplies and equipment apparently had to be replaced, and the new trucks, supplies and equipment were also purchased with funds from sales. The cash was spent, and other cash was generated by decedent's labor. By the time the corporation was formed twelve years after decedent's second marriage, the partnership assets were almost completely different from those existing at the time of the marriage, and these current partnership assets had been purchased almost entirely (to the extent of decedent's contributions) with community funds that had been reinvested back into the business.
C.C. art. 2334 defines separate property as "that which either party . . . acquires during the marriage with separate funds . . ." Under the circumstances of this case we cannot say that decedent acquired any of the shares of stock with his separate funds. The shares of stock were acquired by purchase with, or in exchange for, partnership assets, and at the time of this purchase or exchange we cannot say that any of the partnership assets were his separate property.
Since each specific item of partnership property is owned by the partnership entity and not by any particular partner (who simply has a right to share in the profits and a residuary interest in the assets after payment of the debts upon dissolution), this case is much more difficult conceptually than it would be if the business enterprise had been operated as a sole proprietorship.[2] Nevertheless, while the original and replacement inventory, equipment, etc. were technically partnership assets (and not specific separate or community assets) so that there was not a true commingling in the usual sense of decedent's community and separate assets, the underlying rationale is still applicable under the overall circumstances. The fact that decedent spent 100% of his work efforts on the partnership business and reinvested a substantial amount of the partnership profits which he otherwise would have received as salary or return on capital investment compels the conclusion that decedent's interest in the partnership was almost entirely related to common labor and industry on behalf of the community and not at all related to an initial investment of a $7,000.00 asset on behalf of his separate estate.
We therefore conclude (although not on the basis of a pure commingling theory) that all of the shares of stock purchased by decedent with his share of the partnership assets were community property. Of course, decedent was entitled to reimbursement from community assets, at the termination of the community, of the value of his separate property used to benefit the community. A husband is generally entitled to reimbursement for separate property used for community benefit and lost because of commingling, since reimbursement is the corollary of commingling. Succ. of Hemenway, 228 La. 572, 83 So.2d 377 (1955). The husband should be similarly entitled under the circumstances of this case. And when decedent died, this claim passed to the heirs to his separate estate.
*1002 Accordingly, the judgment of the trial court is amended to recognize a claim by Vincent Guercio, Marie Guercio Rutter, Carmelina Guercio Montalbano and Teresa Guercio Montalbano in the amount of $7,167.44 against the community property assets of the succession of Rosario Guercio. As amended the judgment is affirmed. The right to apply for another rehearing is expressly reserved to each party.
AMENDED AND AFFIRMED.
NOTES
[1] Although the judgment also denied the daughters' motion to remove the administrator and this denial is assigned as error on appeal, the record clearly shows that the motion, not being timely served, was continued to be reset.
[2] In 1952 Vincent's son was admitted into the partnership, and the parties agreed to share profits and losses in the proportions of 51% to decedent, 39% to Vincent, and 10% to Vincent's son. Decedent and Vincent specifically did not transfer any of the "present net worth in the partnership", stating that the son could acquire "a capital interest" in the future through investment of personal funds or through leaving his "undrawn share of the profits . . . as a credit to his capital account".
[3] We have serious doubt that this record establishes the existence of a partnership in 1935, since there is no proof of an agreement before 1940 to share profits and losses. Nevertheless, if there was a partnership, the children did not inherit the right to participate in the partnership. Monroe Grocery Co. v. T. L. & M. Davis, 165 La. 1027, 116 So. 546 (1928). They inherited only the naked ownership of the deceased parent's interest in a proportionate share of a business enterprise, subject to a usufruct.
[4] C.C. art. 1247 provides:

"Also no collation is due for a partnership made without fraud with the deceased, if the conditions of the partnership are proved by an authentic act."
[5] Apparently, at $100.00 per share, 706.8 shares were issued on the basis of the capital account, and decedent paid cash (according to Exhibit P-5) for the remaining 7.2 shares, making a total of 714 shares, or 51% of the total shares.
[1] See generally Huie, Separate Ownership of Specific Property Versus Restitution from Community Property in Louisiana, 26 Tul.L. Rev. 427 (1952).
[2] For example, in Vining v. Beatty, 161 So.2d 298 (La.App. 2nd Cir. 1964) the wife acquired a general mercantile business before her marriage, and the court held that merchandise seized by a creditor was community property, because the original merchandise had become mingled with and unidentifiable from the merchandise subsequently obtained with the profits of the business. See also McCoy, Problems of Classification of Particular Property under Community Property Regimes, 25 La.L.Rev. 108, 150 (1964).