723 P.2d 925

**William H. and Helen EVANS, husband and wife,
Plaintiffs-Appellants-Cross-Respondents,**

v.

**SAWTOOTH PARTNERS, an Idaho Limited Partnership, Frank J. Weinstock and Jane Doe Weinstock, husband and wife, and L. Scott Barksdale, Defendants-Respondents-Cross-Appellants.**

No. 16110.

Court of Appeals of Idaho.

July 31, 1986.

Douglas J. Aanestad (argued), and J. Stephen Crabtree (Hogue, Speck & Aanestad), Ketchum, for appellants.

Edward A. Lawson (Lawson & Peebles), Ketchum, for respondents.

BURNETT, Judge.

This case presents a controversy over the valuation of real property. It focuses upon a highly desirable tract of undeveloped land in the Wood River Valley. The appeal is taken from a judgment denying recovery of any deficiency after a trustee's sale under a deed of trust. We are asked to review the district court's finding that the fair market value of the property was at least equal to the indebtedness secured by the deed of trust. Questions concerning costs and attorney fees are also presented.

For reasons set forth below, we affirm the district court's judgment on the deficiency question, but we vacate its order on costs and attorney fees.

The background facts are undisputed. In 1981 William and Helen Evans sold the subject property, containing about five acres, to Sawtooth Partners, a limited partnership. The purchase price was $325,000, $50,000 to be paid at closing and the remainder to be carried on a promissory note. The note provided that four instalments of $70,000 each, consisting of principal and interest, would be paid semiannually, followed by a final payment of $95,000. The note was secured by a deed of trust on the property.

The partnership made one instalment payment, as well as the down payment, before defaulting. The deed of trust was foreclosed nonjudicially. By the time a trustee's sale was conducted, the outstanding balance on the note, including accrued interest, was approximately $317,000. The sellers bought the property back from the trustee with a bid of $240,000. They then sued the partnership for an alleged deficiency of about $77,000. The partnership counterclaimed for $75,000, alleging misrepresentation. However, this claim was dropped before trial. The sole issue tried was the sellers' right to a deficiency judgment.

This issue was governed by I.C. § 45–1512. The statute limits recovery of a deficiency to the difference between the outstanding indebtedness and the amount for which the property is sold by the trustee, or to the difference between the indebtedness and the fair market value of the property, whichever is less. Following a bench trial, the district court found that the fair market value of the property equaled or exceeded the remaining indebtedness of $317,000. Consequently, the court disallowed recovery of any deficiency.

I

The sellers have attacked the court's valuation of the property on several different

fronts. First, they contend that the district judge erred by admitting evidence of a third party's offer to purchase the property from the partnership several months before the trustee's sale. The third party, an entity known as the American Indian Nation Trust, owned an adjacent tract. The Trust offered, through its representative, Richard Wagner, to buy the property for $300,000. The offer contained detailed terms and was accompanied by an earnest money check for $5,000. The partnership counteroffered a price of $325,000. Wagner informally agreed to this figure, but funding became a problem and a deal never was consummated.[1]

Counsel for the sellers objected at trial to all evidence of the negotiations between Wagner and the partnership. In support of his objection, counsel cited *Oregon-Washington Railroad & Navigation Co. v. Campbell*, 34 Idaho 601, 202 P. 1065 (1921). There our Supreme Court ruled that evidence of an unaccepted offer to purchase property could not be admitted to show fair market value in a condemnation action. Nevertheless, the district court in the present case overruled counsel's objection.

Although *Campbell* has not been cited in any subsequently reported Idaho case, it is not an isolated decision. Across the country, appellate courts are divided over the question whether unaccepted offers to purchase should be admissible. *See* Annot., 25 A.L.R. 4th 571 (1983).

> Although it has been frequently held that the price at which property is bought and sold is admissible upon the issue of value, many courts have adopted the general view that evidence of unaccepted offers to purchase the property in question is not admissible as evidence of the property's value in condemnation cases ... and in other cases involving a question as to the property's value.... As support for this view, courts have noted the uncertain and speculative nature of testimony of offers to purchase,

the hearsay problems associated with testimony relating to such offers, and the collateral nature of the issues raised in the course of evaluating an offer to purchase.

*Id.* at 575 (footnote omitted).

It appears to us that the diversity of court rulings has been produced largely by the varying degrees to which the problems noted in the Annotation can be found in the cases considered. In *Campbell*, the Court's opinion did not elaborate upon the evidence offered or upon the perceived problems that might result from its admission. However, the Court gave some indication of its concerns by citing with approval a United States Supreme Court decision in *Sharp v. United States*, 191 U.S. 341, 24 S.Ct. 114, 48 L.Ed. 211 (1903). The *Sharp* Court upheld a trial court's exclusion of testimony by a property owner regarding offers he had received but not accepted. The Supreme Court said that such testimony would be hearsay and that the opposing party would not be able to probe a would-be purchaser's good faith, motives, seriousness and knowledge of the property when making the offer. In the present case, none of the problems described in *Sharp* or by the Annotation can be found. There was nothing frivolous, ill-informed, or speculative about Wagner's offer or about his later testimony. The offer was detailed and, as noted, was accompanied by $5,000 in earnest money. Because Wagner, the offeror, testified in person, there was no hearsay or confrontation problem. Finally, the record discloses no collateral issues concerning the offer that would have defeated its probative value on the question of valuation.

■ We hold that the district court did not err in admitting evidence concerning Wagner's offer. In so holding, we do not purport to overrule *Campbell*. Rather, we simply decline to stretch the application of *Campbell*'s rule beyond its apparent rationale. Where, as here, the evidence is reli-

---

1. Later, Wagner learned that the partnership might be in financial distress. He then made an offer of $265,000. He eventually testified that

he believed the property actually was worth $325,000 and that he made the $265,000 offer merely "to see if it would fly." It did not.

able, nonspeculative and free from hearsay, confrontation or other problems, the general preference for allowing triers of fact to consider probative evidence, and to give it such weight as they think it deserves, militates in favor of admitting the evidence. Our view is philosophically consistent with the thrust of IDJI 712, which tells jurors to determine fair market value by taking into account "all factors which could fairly be suggested by the seller ..., and all counter-arguments which the buyer could fairly make ..., to the extent that you believe such matters would have been considered in the bargaining as to price."

The sellers further contend that even if the evidence properly was admitted, the district judge misinterpreted it. They invite attention to the court's memorandum opinion, which refers to an offer of $325,-000 instead of $300,000. But we are not convinced that the judge misunderstood the evidence. As our discussion has shown, Wagner's offer of $300,000 elicited a counteroffer of $325,000, which Wagner found acceptable and would have paid if funding problems had not arisen. Taken as a whole, the evidence points to a value of $325,000.

▅▅▅ Of course, it might have been more accurate for the court to say that the partnership's offer of $325,000 was accepted, rather than saying that Wagner offered $325,000. Anticipating this possibility, the sellers now argue that offers to sell are no more admissible in evidence than offers to buy. This argument has several defects. First, the sellers did not object at trial to Wagner's testimony about the partnership's counteroffer. Second, Wagner testified the offer was accepted, albeit informally. Third, the rationale for excluding a seller's offer from evidence appears to be that it is a self-serving statement by the owner of his opinion concerning the value of his property. *See generally* Annot., 25 A.L.R.4th 983 (1983). However, in Idaho, the right of a property owner to render such an opinion has long been recognized. *E.g., McFarland v. Joint School District 365 in Elmore and Owyhee Counties*, 108

Idaho 519, 700 P.2d 141 (Ct.App.1985). We conclude that the district court did not err by admitting evidence regarding Wagner's attempt to buy the property or by interpreting the evidence to support a value of $325,000.

· The sellers' next line of attack is to challenge the overall sufficiency of evidence to support the judge's finding that the property was worth at least the amount of the indebtedness at the time of the trustee's sale—approximately $317,000. Valuation is a question of fact. We will not disturb a trial court's factual findings unless they are clearly erroneous. I.R.C.P. 52(a). Findings are deemed clearly erroneous only if they are unsupported by substantial evidence. *Rasmussen v. Martin*, 104 Idaho 401, 659 P.2d 155 (Ct.App.1983). We apply this standard of review to all findings, whether made upon testimonial or documentary evidence. *DeMarco v. Stewart*, 107 Idaho 555, 691 P.2d 801 (Ct.App.1984).

In addition to the Wagner testimony, the evidence regarding value was provided by two appraisers. An appraiser called as a witness by the sellers opined that the fair market value of the property was $265,000. An appraiser called by the partnership valued the property at $340,000. These assessments were based primarily upon a comparison of similar properties in the area. The property deemed most similar by both appraisers was described in court as the "Candy" property. It had been sold recently for $295,000. The appraisers disagreed on how it compared to the subject property. The sellers' appraiser found that the "Candy" property had more privacy, lower risk of flooding, better access from a main highway and a potential to be subdivided. In contrast, the partnership's appraiser found the subject property superior because of greater river frontage, improvements on the land, and more direct access from the highway. The testimony of the two appraisers also differed on the effect of a depressed market on the subject property's value. The partnership's appraiser testified that the subject property was unique and could be afforded only by

wealthy purchasers. Accordingly, the price would not be sensitive to general trends in real estate market. The sellers' appraiser testified that the value of the property would be affected by a depressed real estate market.

■ The sellers also call attention to other points of conflict, such as the relative experience of the two appraisers, the different preparation dates and forms of their appraisal reports, contradictions in testimony, and the sellers' inability to find a buyer for the property after the trustee's sale, even though the property was listed for $295,000 and later reduced to $275,000. We cannot—and as an appellate court, we should not—weigh every contested item of evidence against the whole. Our task is not to announce how we would have decided the case if we had collectively served as the trial judge. Rather, our function is to determine whether the trial court's findings are supported by substantial, though conflicting, evidence. We believe that they are. Counsel on each side did a thorough job of exposing the weaknesses of the other's appraiser. However, neither appraiser was so entirely discredited that his or her opinion had to be disregarded. The judge, after a three-day trial, chose to give greater weight to the testimony of the partnership's appraiser. We will not overturn that choice.

The sellers next contend that the trial judge substituted his personal opinions for the evidence introduced in court. This argument seems to be based upon the judge's familiarity with the subject property and upon his expressed feelings about deficiency judgments in general. Regarding the question of familiarity, the record shows that the judge, before trial, notified the litigants of his knowledge concerning persons and places in the lawsuit. He asked whether either party objected to his continued participation in the case. Neither party objected. Indeed, the parties stipulated that he could view the property first hand to aid him in understanding the evidence. This practice is well recognized in Idaho.

*See, e.g., Lobdell v. State,* 89 Idaho 559, 407 P.2d 135 (1965).

■ The judge noted in his memorandum decision that he considered the subject property to be more valuable than the "Candy" property, partly because of traffic noise on the "Candy" property. He also stated that although the "building envelope" on the subject property was less private than that available on the the "Candy" property, the view was directed toward a million dollar home down river and would not adversely affect value. The sellers now contend that the record does not support these observations. We disagree. The observations relate to matters raised by the evidence. The judge did not impermissibly go beyond the evidence; he used his familiarity with the area to resolve conflicts over matters placed in evidence.

The judge's feelings about deficiency judgments were expressed in his memorandum decision:

> [T]he defendant is totally correct in cautioning the Court to scrutinize this case with great care because of the statutory scheme of foreclosures in the State of Idaho. As is pointed out by the defendant, in Idaho when a foreclosure action is commenced, the seller can conceivably take back the property at a foreclosure sale with a very low bid, sue the purchaser for a deficiency, obtain a judgment for the deficiency, collect the judgment for the deficiency and then sell the property for much more than was sold to the purchaser in the first place, thereby causing a tremendous windfall to the seller. On the other hand, the buyer has no remedy if he is in default, other than to hope that the seller will bid the amount due on the Deed of Trust note at the foreclosure sale.

Upon this language, the sellers urge that the judge was prejudiced against any party seeking a deficiency judgment and that he failed to recognize how the fair market value limitation upon deficiency judgments protects the defaulting buyer. We are not persuaded that the judge's concerns derogate from his factual findings. Deficiency

judgments long have been matters of public concern. *See generally Quintana v. Anthony,* 109 Idaho 977, 712 P.2d 678 (Ct. App.1985). Idaho Code § 45–1512 limits, but does not eliminate, deficiency judgments. We think the judge in this case understood that the statute allows recovery of a deficiency where the outstanding debt exceeds both the price obtained at the trustee's sale and the fair market value of the property. The entire thrust of trial was to establish fair market value in relation to the indebtedness. The real question is whether the judge's finding of fair market value is supported by substantial evidence. Because we hold that it is, we sustain the district court's disallowance of a deficiency.

## II

We now turn to the questions of costs and attorney fees. The district court refused to make any award below. The partnership, as a cross-appellant, has challenged that ruling.

The district judge stated that he would not award attorney fees because he considered the case to be a "draw," with no prevailing party. He so characterized the case because, in his view, the partnership successfully had resisted the recovery of a deficiency but had generated the lawsuit by defaulting in the first place. He acknowledged having "no legal basis for doing what I am doing, but it is my own ... sense of justice."

■ The identification of a prevailing party rests in the trial court's sound discretion. *Chadderdon v. King,* 104 Idaho 406, 659 P.2d 160 (Ct.App.1983). However, that discretion is circumscribed by legal limits. One such limit is that a judge may not use the award or denial of attorney fees to vindicate his sense of justice beyond the judgment rendered on the underlying dispute between the parties. *Bank of Idaho v. Colley,* 103 Idaho 320, 647 P.2d 776 (Ct.App.1982). This precisely is what the judge in the present case, by his candid acknowledgment, attempted to do. We

hold that the judge erred. His order regarding attorney fees must be set aside.

■ When a judge improperly exercises discretion due to a legal error, the appellate remedy ordinarily is not to usurp the judge's authority by exercising such discretion ourselves. Rather, it is to remand the case for reconsideration in light of the correct legal standard. *E.g., Torres v. State,* 107 Idaho 895, 693 P.2d 1097 (Ct.App.1984). In *Chadderdon v. King, supra,* we articulated the criteria for identifying a prevailing party:

(a) the final judgment or result obtained in the action in a relation to the relief sought by the respective parties; (b) whether there were multiple claims or issues between the parties; and (c) the extent to which each of the parties prevailed on each of the issues or claims.

104 Idaho at 411, 659 P.2d at 165. In this case the partnership prevailed fully at trial but dropped its counterclaim for misrepresentation before trial. We direct the judge on remand to determine, in the sound exercise of its discretion under *Chadderdon,* whether the partnership prevailed in the district court. If so, the partnership will be entitled to a reasonable attorney fee under I.C. § 12–120(2). *See, e.g., Camp v. Jiminez,* 107 Idaho 878, 693 P.2d 1080 (Ct.App. 1984) (statute held applicable to action on promissory note).

■ The partnership requested costs not only as a prevailing party but also under I.R.C.P. 68. This rule mandates such an award where a defendant makes an offer of judgment that is rejected by a plaintiff and the ultimate result is less favorable to the plaintiff than was the defendant's offer. Here, the partnership made two offers of judgment, both more favorable than the result obtained by the sellers at trial. Nevertheless, the district judge refused to award costs, explaining that he felt Rule 68 was discretionary. We held to the contrary in *Masters v. Dewey,* 109 Idaho 576, 709 P.2d 149 (Ct.App.1985) (a decision unavailable to the judge when he ruled in the case at hand). Accordingly, the judge's order regarding costs also must

be set aside. On remand the judge is instructed to award the partnership the costs it incurred after the first offer of judgment was rejected, pursuant to Rule 68. If the court determines the partnership to be a prevailing party, costs not covered by Rule 68 may also be awarded under I.R.C.P. 54(d)(1).

The parties have requested costs and attorney fees on appeal. The partnership clearly has prevailed on the deficiency question, but the ultimate allocation of costs and attorney fees at the trial level awaits a final determination on remand. We cannot yet say whether the partnership should be deemed the prevailing party as to the totality of issues presented on appeal. Consequently, we make no award at this time but we instruct the district judge that if he finds the partnership to be the prevailing party below, entitling it to attorney fees and a full award of costs, then the partnership will be deemed the prevailing party on appeal as well. In that event, the judge shall include in the cost and attorney fee awards such amounts as he finds appropriate for the appeal, pursuant to I.A.R. 40 and 41.

In summary, we affirm the judgment of the district court denying recovery of a deficiency. We vacate the order denying costs and attorney fees. The case is remanded for reconsideration of costs and attorney fees, including those incurred on appeal, consistent with this opinion.

WALTERS, C.J., and HUNTLEY, J., pro tem, concur.