726 P.2d 1143

**Shelley Smith BRAZIER, Plaintiff-Respondent,**

v.

**Roger Milton BRAZIER, Defendant-Appellant.**

**No. 16323.**

Court of Appeals of Idaho.

Oct. 9, 1986.

---

Stanley W. Welsh (Clemons, Cosho & Humphrey, P.A.), Boise, for defendant-appellant.

Charles F. McDevitt (argued), and Paul J. Buser (Givens, McDevitt, Pursley, Webb & Buser), Boise, for plaintiff-respondent.

BURNETT, Judge.

This is an appeal from a district court decision affirming a magistrate's decree in a divorce action. There are three issues. (1) Did the magistrate err in finding that the retained earnings of a separate property partnership were also separate property? (2) Does the evidence support a value ascribed by the magistrate to the community's interest in a corporation? (3) Did the magistrate err in ordering an automatic increase in child support payments at a future date? For the reasons stated below, we affirm the district court's decision in part, reverse it in part, and remand the case for further proceedings.

This litigation began when Shelley Brazier sued for divorce after thirteen years of marriage. Pursuant to a stipulation between the parties, the magistrate entered a partial decree dissolving the marital relationship. The wife was awarded custody of two minor children; the husband received visitation rights. Subsequently, after an evidentiary hearing, the magistrate

entered a final decree dividing property and fixing child support.

The magistrate divided the parties' personal effects in a substantially equal fashion. He also found that the community property included a residence and shares of stock in a business corporation, Mountain States Microfilm, Inc. Treating these assets as having approximately the same value, the magistrate awarded the residence to the wife and the corporate stock to the husband. In addition, he confirmed as the wife's separate property her one-third interest in a family partnership known as the Wyndemere Co., together with her share of the partnership's retained earnings.

With respect to child support, the magistrate found that $250 per month per child was a reasonable amount, and he ordered the husband to pay it. He further found that teenagers are more expensive to maintain than younger children. Accordingly, he provided in the decree that monthly support payments automatically would increase to $300 per child when the older child reached the age of fourteen years.

On appeal to the district court, the husband challenged the characterization of retained partnership earnings as separate property, the valuation of the corporate stock, and the provision for increased child support at a future date. However, the district court affirmed the magistrate's decree on all points. The husband appealed again, bringing the same issues before us.

I

We first consider the retained earnings question. As mentioned above, the wife owned one-third of the family partnership known as the Wyndemere Co. The other partners were her brothers. The partnership's business was managed by the wife's father. It is undisputed that the wife received her interest in the partnership by gift and that it was properly confirmed as her separate property. However, a dispute exists concerning the proper characterization of the partnership's retained earnings.

The Wyndemere Co. never distributed earnings to partners. The earnings were retained and reinvested in the partnership's business. Nevertheless, the partners reported their shares of the earnings and paid income taxes on them. In the wife's case, the taxes were paid with community funds. The husband now contends that the wife's share of the partnership's undistributed earnings represented income from separate property, and should have been characterized as community property, within the meaning of I.C. § 32–906. He further asserts that by retaining and reinvesting such earnings, the partnership commingled the wife's community and separate property to such an extent that her entire partnership interest became community property. The magistrate and district judge rejected these contentions, holding that the wife's entire partnership interest remained her separate property.

The husband's contentions are grounded in the application of law to undisputed facts. Accordingly, the standard on appeal is one of free review. Our analysis begins by noting the statutes cited by the parties. Idaho Code § 32–903 provides that property acquired by gift during a marriage remains the separate property of the receiving spouse. However, I.C. § 32–906 provides that "[t]he income of all property, separate or community, is community property" unless the parties specifically provide otherwise by written agreement.

The courts below relied on *Simplot v. Simplot*, 96 Idaho 239, 526 P.2d 844 (1974), in holding that the retained earnings of the partnership were not "income" as denoted by I.C. § 32–906. In *Simplot*, the husband owned as his separate property a minority interest in a corporation. During the marriage, the corporation retained and reinvested large sums of money. In divorce proceedings, the wife asserted that her husband's share of the corporation's retained earnings were "rents and profits," and thus were community property, under a predecessor version of I.C. § 32–906. Our Supreme Court disagreed, ruling that the retained earnings were separate property. The Court emphasized that the hus-

band, as a minority shareholder, had no legal right to compel distribution of the retained earnings. Indeed, there was no guarantee that the funds ever would be made available to him. The Court further noted that retention of earnings was a sound business decision on the part of the corporation. To award a share in those earnings to the wife, as part of a distribution of community property, would be tantamount to forcing the corporation to declare a dividend, substituting the divorce court's business judgment for that of the corporate directors.

We believe the reasoning that underlies *Simplot* is applicable to retained earnings of the partnership in this case. A partnership as an entity may hold title to real or personal property. I.C. § 53–308. An individual partner has no right to deal with partnership property other than for partnership purposes, nor to assign his rights in specific partnership property without the consent of his partners. I.C. § 53–325. Absent an agreement to the contrary, all partners have equal rights in the management and conduct of partnership business. Any differences regarding the conduct of partnership business must be resolved by a majority of the partners. I.C. § 53–318. The decision to reinvest or to distribute partnership earnings usually does not rest with any one partner. It is a joint decision made by the partners collectively or—in this case—by a manager (the wife's father) exercising a power conferred by the partnership agreement. The decision to reinvest or to distribute partnership earnings is one of business judgment. There is no assertion here of any improper exercise of such judgment.[1]

Conversely, if retained earnings were deemed to be community property, the ability of the partnership to make sound business decisions would be impaired. The husband's own argument amply demonstrates this point. He urges that by reinvesting retained earnings, the partnership commingled community and separate funds. As a practical matter, it would seldom, if ever, be feasible to reinvest earnings while maintaining the separate identity of each partner's "original" and "earnings-based" interests. Each partner, like the wife in this case, would confront a Hobbesian choice between withdrawing her earnings from the partnership (assuming she could do so) or permitting the involuntary transmutation of part or all of her separate property into community property. This dilemma would undercut the policy embodied in I.C. § 32–903, and recognized in Idaho case law, that a spouse is entitled to preserve his or her separate property. *Simplot v. Simplot, supra; Malone v. Malone*, 64 Idaho 252, 130 P.2d 674 (1942).

The husband also urges that we distinguish the retained earnings of a partnership from the retained earnings of a corporation because they are taxed differently. It is true that corporate earnings generally are not taxed to the shareholders until actually distributed, but that partnership earnings are taxed to the partners whether or not distributed. Z. CAVITCH, BUSINESS ORGANIZATIONS § 5.02[1] (1985). However, we do not regard the Internal Revenue Code to be a dispositive instrument for defining community and separate property. Although federal tax law definitions occasionally may assist in determining what constitutes "rents and profits," or "income," often these definitions, instead of being helpful, generate confusion. *See* Erickson, *Income: Rents, Profits and Issues*, IDAHO COMMUNITY PROPERTY LAW § 6.1 (Idaho Law Foundation, Inc. 1982) (hereinafter cited as Erickson). For example, federal tax law provides that the shareholders of a close corporation may file notice of a subchapter S election. Follow-

---

1. As recognized in *Simplot*, there may be circumstances where a divorce court could pierce the business entity. If a partnership had no valid business purpose, and if it was created or managed with the aim of depriving the community of funds, the partnership's retained earnings might be treated as community property. A similar result could obtain if the partner-spouse treated the entire partnership as his property exclusively, causing the rights of other partners to be illusory. However the husband does not allege such circumstances here.

ing such an election, the earnings or losses of the corporation are "passed through" to the shareholders for tax purposes as though they were partners. If this Court blindly followed the Internal Revenue Code in characterizing property as community or separate, an exception to *Simplot* would obtain in subchapter S cases. The reasoning of *Simplot*—based upon the principle of sound business judgment and upon the limited power of individuals to affect entity decisions—would be defeated. This anomaly illustrates why we decline to treat earnings retained by a partnership differently from retained corporate earnings simply because they are taxed differently.

Neither does case law of other jurisdictions alter our analysis. The only other community property states that treat income generated by separate property as community property are Louisiana and Texas. Erickson, *supra*. There appears to be no reported decision on point in Texas. However, the husband cites *Succession of Guercio,* 359 So.2d 996 (La.App.1977), for the proposition that retained earnings of a partnership are community property under Louisiana law. The decision can be so interpreted, but the Louisiana court also said that the retained earnings there at issue were "almost entirely related to common labor and industry on behalf of the community and not at all related to an initial investment ... on behalf of [one spouse's] separate estate." This language is consistent with Idaho decisions recognizing that where community labor has been expended in a separate property business, where no gift has been intended, and where the community has not received fair compensation for its services, the community is entitled to such compensation upon divorce. *See,*

*e.g., Speer v. Quinlan,* 96 Idaho 119, 525 P.2d 314 (1973). These decisions do not conflict with *Simplot.* In any event, here the wife has been a passive partner, contributing no labor toward the partnership. The community has no claim for compensation based on her services.

■ We conclude that the magistrate and district judge correctly treated the wife's share of the partnership's retained earnings as her separate property. It was not subject to division upon divorce.[2] However, there remains a question whether the community ought to be compensated for its payments of income taxes on the wife's share of reported partnership earnings. The courts below did not fully address this question. The wife asserts that a presumption of gift applies and that her husband has not rebutted the presumption. Until recently, Idaho case law would have supported the wife's assertion. When a husband used community property to improve his wife's separate estate, a gift of his community share was presumed. *See, e.g., Heslip v. Heslip,* 74 Idaho 368, 262 P.2d 999 (1953). This court-created presumption evolved when I.C. § 32–912 granted husbands dominion over community property. However, in 1974, the Legislature changed the statute. As amended, the statute now grants "[e]ither the husband or the wife" power to manage and to control community property. We have been unable to find a reported case invoking the old presumption of gift by a husband under the new statute. The reason, we surmise, is that women, having been freed from statutory subjugation to their husbands' control of community property, are no longer in need of a

---

**2.** Trial courts are not barred from taking note of retained earnings when dividing community property. The division of community property may be made unequally when "compelling reasons" exist for doing so. I.C. § 32–712. The choice between substantial equality and some other equitable division is committed to the trial judge's sound discretion, guided by statutory and case law. *Bailey v. Bailey,* 107 Idaho 324, 689 P.2d 216 (Ct.App.1984). Where retention of earnings in a separate property entity has greatly increased one spouse's separate estate, leav-

ing a modest community estate to be divided with the other spouse, the court may deviate from equality in order to alleviate hardship. *Cf. Speer v. Quinlan, supra* (acknowledging that predecessor version of I.C. § 32–712 permitted a trial court to make unequal division of community property in light of retained corporate earnings). However, the magistrate in this case found no hardship and determined that a substantially equal division of the community property was appropriate.

special presumption that discriminates in their favor by transmuting community property into separate property. Because the perceived rationale for the presumption no longer exists, we decline to apply it here. *See* Moore, *What is Community Property?*, § 3.11, COMMUNITY PROPERTY LAW OF IDAHO (Idaho Law Foundation, Inc. 1982). Our view is in accord with the more fundamental presumption that property acquired during the course of a marriage is, and remains, community property. *See, e.g., Shumway v. Shumway*, 106 Idaho 415, 679 P.2d 1133 (1984); *Winn v. Winn*, 105 Idaho 811, 673 P.2d 411 (1983).

■ In the present case, the record contains no obvious answer, independent of any presumption, to the question whether payments of income taxes on partnership earnings were intended as a gift of husband's community share to the wife's separate estate. If there was no gift, the community is entitled to compensation for these payments. We conclude that the case must be remanded for the proper determination of entitlement to compensation and—if necessary—the appropriate amount.

## II

We now turn to valuation of the community property. The husband argues that the magistrate erred in finding that shares of stock in Mountain States Microfilm, Inc., were approximately equal in value to the parties' residence. The magistrate made what he considered to be offsetting awards: the stock to the husband and the residence to the wife. He valued the residence at $102,000—a figure not in dispute. Accordingly, the question before us is whether the record supports his companion finding, clarified in a post-decree order, that the corporate stock was worth approximately $100,000. The standard of appellate review is whether the magistrate's finding is supported by substantial evidence. *Gardner v. Gardner*, 107 Idaho 660, 691 P.2d 1275 (Ct.App.1984), *citing*

*Nicholls v. Blaser*, 102 Idaho 559, 633 P.2d 1137 (1981).

The stock in question represented 73% of all outstanding shares in the corporation. The wife testified that, in her opinion, the corporation as a whole had a fair market value of $150,000. Her testimony implied a value of $109,500 (73% of $150,000) for the stock. Although an owner of property is competent to testify as to its value, the weight to be given such testimony depends upon the owner's background, knowledge and experience. *Simpson v. Johnson*, 100 Idaho 357, 597 P.2d 600 (1979). Here, the wife's opinion was admitted without objection, and the magistrate noted it in his memorandum opinion. However, he made it clear that he accorded the testimony little or no weight. The wife's involvement in corporate affairs was not extensive and the factual basis for her opinion was scanty at best. Indeed, she admitted that the $150,000 figure had been pulled "out of the air."

The wife also testified that the husband had offered to sell a portion of the corporation's assets for $100,000 three or four years before trial. The offer was not accepted. This testimony was admitted without objection. However, the magistrate later wrote in his memorandum opinion that "[o]ffers are not admissible to show value." He opined that such offers are admissible only "in rebuttal to an inconsistent opinion of value." The wife now argues that an offer to sell is admissible during a party's case in chief and that the offer in this case constitutes substantial evidence in support of the magistrate's valuation.

Testimony about an offer to sell may be viewed as a nonhearsay admission of a party-opponent. *See* I.R.E. 801(d)(2). If the magistrate had been afforded the benefit of our recent decision in *Evans v. Sawtooth Partners*, 111 Idaho 381, 723 P.2d 925 (Ct.App.1986), he would not have suggested that a rigid rule prohibits the admission of all offers to sell as proof of value. However, setting aside the question of admissibility, the probative value of offers to sell may vary widely depending on the circumstances of each case. An offer might

be entitled to substantial weight if the offeror later asserts a higher value for the property. Although an owner might offer to sell for a price exceeding his estimate of fair market value, he would rarely offer to sell for less. *See, e.g., Grand Rapids v. Widdicomb,* 52 N.W. 635 (Mich.1892).

■ Here, the husband apparently was willing to sell a portion of the company for $100,000; but it might well have been worth substantially less. In fact, the offer was unaccepted and the wife herself admitted that she "felt [$100,000] was a high number." Moreover, the volatility of the market for the property being valued, and the remoteness of an offer from the time of trial, must be considered in weighing the evidence. As noted, the offer in this case was made three or four years before trial. Under all the circumstances, we believe the magistrate correctly placed little reliance upon the offer to sell in valuing the corporate stock.

The magistrate may have relied more heavily upon certain figures, cited in his memorandum decision, relating to the book value of the corporation's assets. The magistrate observed:

> [T]he fixed and current assets such as equipment, fixtures and vehicles have a value of approximately $50,000 after depreciation. The inventory has a value of near $63,000 and the accounts receivable total nearly $79,000. Those accounts receivable are offset to some degree by accounts payable of nearly $68,000. There are also long term debts and liabilities of the corporation. The bulk of that debt, nearly $50,000 of the $57,000 debt is owed to the Brazier estate.

However, the magistrate did not explain the process by which he inferred from these figures a stock value of approximately $100,000. No such process is apparent to us. We further note that our Supreme Court has admonished trial judges not to focus solely upon book value when valuing a corporation. *Simplot v. Simplot, supra.* Accordingly, we are unable to say that the book value figures cited by the magistrate constitute substantial evidence in support of his valuation.

Finally, the wife urges that the valuation is supported by earnings reflected in the corporation's financial statement. This exhibit purported to show that Mountain States had a net income of $24,446.89 during a six-month period before trial. However, the expert witness who prepared the exhibit testified that numerous adjustments should be made before utilizing the net income figure for valuation purposes. With adjustments, the corporation would have had no net earnings, but a loss of $9,400.00, for the six-month period in question. The magistrate commented on the corporation's earnings history:

> Mountain States Microfilm has not been a big money-maker. It has not shown a great earning capacity. Mr. Brazier has managed the business and supervised its functions and several employees at an annual salary of $19,000 to $20,000. He has clearly subsidized the business by performing those executive management functions at that salary. Any potential purchaser would have to anticipate a much greater salary expenditure to obtain a competent executive manager. Mr. Brazier has further subsidized the business by making loans to it from his separate estate. The Braziers have also obtained personal loans from the parents of Mrs. Brazier which have gone into the business.

We find nothing in the earnings figures or in the magistrate's comments to support his eventual determination that the corporate stock was worth approximately $100,000.

■ In sum, we conclude that the record before us does not contain substantial evidence supporting the magistrate's valuation of the stock. The portions of the final decree distributing community property must be set aside and the case remanded for reconsideration of the valuation issue. The magistrate may take further evidence if he deems it desirable to do so. The magistrate also may consider the effect any compensation for tax payments, dis-

cussed in Part I above, will have on the total scope of community property to be divided.

### III

We now consider the last issue on appeal—whether a divorce decree may provide for future increases in child support. It will be recalled that the decree commanded the husband to pay $250 per month per child until the older of the two children reached the age of fourteen years. At that time the monthly support level would "increase ... to $300 per month per child." We are required to resolve two distinct subissues. First, does a divorce court possess the discretionary power to order a future adjustment in child support? Second, if such power exists, did the magistrate in this case employ the correct procedure in exercising the power? Both of these questions involve an appellate standard of free review.

### A

The husband argues that a trial court never may order a future adjustment in child support. He would have us hold that any such increase may be obtained only through a subsequent proceeding for modification under I.C. § 32–709. We disagree. The statute recites that "[t]he provisions of any decree respecting maintenance or support may be modified only as to installments accruing subsequent to modification and only upon a showing of substantial and material change of circumstances." Although this language permits post-decree modifications of child support awards, it contains no prohibition against future adjustments in the decrees themselves. As we read it, the purpose of the statute is to minimize the number of occasions when divorce decrees must be disturbed. This purpose is served, not defeated, by providing for future adjustments in the decrees.

The husband also cites *Sullivan v. Sullivan*, 102 Idaho 737, 639 P.2d 435 (1981), in support of his position. In *Sullivan*, the trial court modified a divorce decree by increasing alimony payments based solely on the effects of inflation. The Idaho Supreme Court held that a change in the general cost of living, without any specific determination of the needs and resources of the parties, would not justify modification of the alimony award. The message of *Sullivan*, as we read it, is that a balance exists between the general rule favoring finality of judicial decrees and the special power of a divorce court to exercise continuing jurisdiction over questions of maintenance or child support. An existing decree will not be modified absent the showing of a permanent and substantial change in circumstances. This showing may include increases in the general cost of living but also must reflect specific needs and the ability to pay any increased amount of support. Nothing in *Sullivan*'s message precludes—even by implication—a court from providing in the original decree for future support adjustments, based upon anticipated needs and resources.

■ Indeed, any broader reading of *Sullivan* would be an affront to common sense. Support obligations necessarily are determined with an eye . to the future. Needs and resources are not static; they are dynamic. If a judge finds that the needs of a child or of a former spouse are likely to change in the future, and that resources to meet the changing needs are likely to be available, there is no logical reason to deprive a judge of authority to prescribe a payment schedule containing future adjustments. Of course, if the judge's assessment turns out to be incorrect, the aggrieved party may seek a corrective modification under I.C. § 32–709. The possibility that such corrections will be necessary in some cases should be weighed carefully by judges before they enter decrees containing future adjustments. But this is no reason to strip judges in all cases of the power to prescribe such adjustments. To deny this power, in cases where the judge can determine the likely evolution of needs and resources, would condemn the parties to suffer needless cost and stress of periodic proceedings to update their decrees. We hold that judges

may prescribe support schedules containing future adjustments in appropriate cases.

### B

In this case, the parties offered no evidence regarding the likely evolution of the children's needs or parental resources. Rather, the magistrate, acting *sua sponte*, stated in his memorandum decision that "[a]s [the children] reach their teenage years it will undoubtedly become more expensive to maintain them regardless of inflation." The magistrate made no other findings as to future needs and resources. In support of the magistrate's action, the wife now argues that, in essence, the judge "took judicial notice, as a matter of common knowledge, that it cost[s] more to raise children who are ages 14 and 12 and that a child's needs are more expensive at those ages than for children who are only six and eight."

Judicial notice is a mechanism enabling a judge to excuse the party having the burden of establishing a fact from producing formal proof of that fact. E. CLEARY, McCORMICK ON EVIDENCE § 328 (1984). The mechanism has its limits. A judicially noticed fact must be free from reasonable dispute because it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot readily be questioned. I.R.E. 201; *see generally City of Lewiston v. Frary,* 91 Idaho 322, 420 P.2d 805 (1966).

In this case the "fact" allegedly noticed by the magistrate is plausible, but we are not prepared to say that it would be beyond dispute in every case. Neither do we find in the magistrate's memorandum decision any nexus between the general "fact" of increased cost and the particular adjustment of $100 per month ordered in the decree.[3] Idaho Code § 32–706 requires an individualized determination regarding the

needs of children and the resources of parents. A magistrate's general perception of increased cost will not suffice.

Of course, judges may consider economic and sociological data in establishing support schedules. Indeed, they are encouraged to do so. *See, e.g.,* Wikler, *The Economics of Divorce,* 25 THE JUDGES' JOURNAL 9 (1986). But whatever sources of information the judge consults, he must relate such information to the likely evolution of needs and resources in the case before him. Therefore, we hold that although the magistrate in this case had authority to determine future levels of support, he did so in apparent reliance upon a "fact" that was improperly noticed and that was inadequate, by itself, to warrant a future support adjustment.

When a judge's exercise of discretion is affected by an error of law, we will not usurp his role by exercising our own discretion on appeal. The correct appellate response ordinarily is to note the error and to remand the case. *E.g., State v. Torres,* 107 Idaho 895, 693 P.2d 1097 (Ct.App.1984). Accordingly, this case must be remanded for particularized findings on the likely future needs of the children and abilities of the parents to meet those needs. The magistrate may take additional evidence on this issue, if he deems it desirable to do so.

In summary, we affirm the district court's decision upholding the provision of the final decree confirming the wife's separate property interest in the Wyndemere Co. and in its retained earnings. We reverse that part of the decision which upholds the provisions of the decree distributing community property and providing a future adjustment of child support. The district court is directed to remand the case for examination of the community's right to compensation for tax payments, for reconsideration of the value placed on stock in Mountain States Microfilm, Inc., and for

---

**3.** We interpret the decree to require $300 per month for *each* child when the older child reaches age fourteen—a total increase of $100 per month. If there is any dispute about this interpretation, it can be resolved on remand if the magistrate decides to reenter a decree containing a similar provision.

proper findings on the question of future child support.

Because neither party has clearly prevailed in this appeal, we award no costs or attorney fees under I.A.R. 40 and 41. However, the magistrate upon remand is authorized to make such awards as he deems appropriate under the separate criteria contained in I.C. §§ 32–704(2) and 32–705.

SWANSTROM, J., concurs.

WALTERS, C.J., specially concurring.

Although I concur in the foregoing opinion, I do so with some hesitancy. I am troubled by our determination in Part I, to the effect that undistributed retained earnings of a partnership are the separate property of the spouse who owns a separate property interest in the partnership. It would appear on first blush that such earnings—being income generated during marriage—would be community property under I.C. § 32–906. Nevertheless, the rule applicable to retained earnings of a corporation, where a spouse owns shares in the corporation as separate property, appears apposite to a partnership interest. Under that rule, undistributed retained corporate earnings are not community property (*Speer v. Quinlan*, 96 Idaho 119, 525 P.2d 314 (1974)), particularly where those earnings are not accumulated in cash but instead are reinvested through expansion of the business and the earnings did not result from any community labor. *Simplot v. Simplot*, 96 Idaho 239, 526 P.2d 844 (1974). In developing this rule, the Court in *Speer* found that the state of the law in other jurisdictions on the subject of enhancement in value of separate property businesses during coverture was "one of conflict and contradiction, sometimes resulting in ad hoc, arbitrary, or inconsistent decisions." The Court added:

> We find especially unsatisfactory the artificial distinction made between a separate property business organized in the form of a close corporation and an unincorporated sole proprietorship or partnership.

96 Idaho at 127–28, 525 P.2d at 321–22. Taking this statement at face value, I am constrained to agree with our lead opinion, that the undistributed retained earnings interest, reinvested in a partnership, should not be treated differently from like retained earnings in a corporation.