639 P.2d 435

Shirley P. SULLIVAN, Plaintiff-Respondent-Cross Appellant,

v.

Edward L. SULLIVAN, Defendant-Appellant-Cross Respondent.

No. 13020.

Supreme Court of Idaho.

Dec. 24, 1981.

Louis H. Cosho and Stanely W. Welsh, Clemons, Cosho & Humphrey, Boise, for Shirley P. Sullivan.

William J. Brauner, Caldwell, for Edward L. Sullivan.

BISTLINE, Justice.

In 1969, after twenty-two years of marriage, plaintiff-respondent Shirley Sullivan filed a complaint against defendant-appellant Edward Sullivan seeking a decree ordering that the parties live separate and apart, that she have custody of their minor children, and that Mr. Sullivan pay her a monthly sum sufficient to provide her and the children "with the necessities and amenities consistent with their station in life." Mr. Sullivan then employed counsel and

counterclaimed, seeking a divorce and an equitable division of the community property.

Thereafter both parties, represented by most able counsel, entered into a written agreement which divided their community property, gave Mrs. Sullivan custody of their minor children and set child support at $150 per month per child. The Agreement also provided that Mr. Sullivan was to pay Mrs. Sullivan alimony of $800 per month, ceasing on her death or remarriage, with the alimony payments increasing proportionately to any increase in the Cost of Living Index up to a maximum of $850.00 per month. The Agreement further noted that Mr. Sullivan had paid Mrs. Sullivan's counsel attorney fees of $2,500, which Mrs. Sullivan accepted as full and complete payment for all attorneys fees in all further proceedings between them with reference to divorce, separate maintenance, or this Agreement. Finally, the Agreement provided that it would be submitted to the court for approval, but not merged as a part of the judgment.

Such being accomplished, Mrs. Sullivan amended her complaint to allege that the parties had entered into an agreement dividing the community property, providing for the support of the minor children, and providing for alimony. Mrs. Sullivan asked for judgment awarding her alimony of $800 per month, to be adjusted to reflect the increases in the Cost of Living Index, with a ceiling of $850 per month,[1] and that the court approve and confirm the Property Settlement and Custody Agreement. Mr. Sullivan then filed a perfunctory answer and the cause was submitted to the court. At the hearing, where the property settlement agreement was the only exhibit, Mr. Sullivan rested after Mrs. Sullivan rested. The court then entered a judgment and decree in conformance with the allegations of the amended complaint, the court decreeing alimony and child support as prayed for.

Subsequently, in April 1977, Mrs. Sullivan petitioned for a modification of the divorce decree, alleging a substantial and material change in circumstance and asking for an increase in alimony to $2,500 per month. Mr. Sullivan then apparently moved the court to eliminate alimony altogether.[2] The trial court, after hearing three days of testimony, found that while Mrs. Sullivan's financial net worth had increased, her standard of living had decreased because of inflation and her ineptness in handling her finances. The court then held that Mrs. Sullivan had "met her burden for an increase in alimony based solely on the effect of inflation on her allowance. She has not met her burden of proof so as to justify an increase in alimony because of any loss of her former standard of living by factors other than inflation." The court then increased alimony to $1,500 per month.[3]

As to Mr. Sullivan's attempt to eliminate alimony entirely, the trial court denied this petition on the grounds that Mr. Sullivan was not genuinely interested in having the alimony reduced, that this was just a defensive position, and that he had failed to meet his requisite burden of proof. The court subsequently awarded Mrs. Sullivan $2,776.00 in attorney fees, as against a request of $8,300.00. To arrive at this figure, the court noted that Mrs. Sullivan could have established her case solely by showing her own basic needs, the cost of living increase and that Mr. Sullivan had the ability to pay; the court held that Mrs. Sullivan was responsible for her own attorney's fees for the large expenditure of counsel's time spent in undertaking to establish entitlement to an even greater increase in alimony based on Mr. Sullivan's increased prosperi-

1. Pursuant to this provision, alimony payments were increased to $850.00 on January 15, 1972.

2. Although no such motion appears in the record, the trial court dealt with the matter as if such a motion had been filed.

3. This figure was apparently based on the trial court's computation that since the cost of living had increased 186% since 1967, "it would take $1488.00 per month to replace the plaintiff's original $800.00 per month alimony allowance."

ty—an undertaking in which she did not prevail.[4]

■ There are two primary issues on this appeal, both raised by Mr. Sullivan:[5] (1) whether the trial court erred in finding that Mr. Sullivan had not sustained his burden to show that alimony should be eliminated entirely; and (2) whether the trial court erred in increasing alimony solely on the grounds of inflation.[6]

■ As to the first issue, "the resolution of this question rests within the discretion of the trial court . . . ." *Olsen v. Olsen*, 98 Idaho 10, 11, 557 P.2d 604, 605 (1976). There is abundant evidence to support the trial court's finding, and we find no abuse of discretion.

4. In his letter explaining the award of fees, the trial court reiterated that "[t]he increase in alimony won by plaintiff was based entirely on the application of inflationary influences on the award she won in the original action."

5. Mr. Sullivan also challenges the constitutionality of I.C. § 32–706, citing *Orr v. Orr*, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979). It is a basic rule of this Court, however, that constitutional issues generally will not be considered when raised for the first time on appeal. *See Oregon Shortline Railroad Co. v. City of Chubbuck*, 93 Idaho 815, 474 P.2d 244 (1970). Indeed, the Court in *Orr* noted that states are not precluded "from holding that contempt proceedings are too late in the process to challenge the constitutionality of a divorce decree already entered without constitutional objection . . . ." 99 S.Ct. at 1109 n.4. The Court further noted that it might have been without jurisdiction to consider Mr. Orr's constitutional objection if the Alabama courts had refused to hear it because of Mr. Orr's failure to raise the constitutional challenge until Mrs. Orr sought a contempt judgment against him for his failure to abide by the terms of the decree. 99 S.Ct. at 1109.

It is also a general rule of this Court that "the constitutionality of a statute will not be passed on unless it is absolutely necessary for a determination of the merits of the case," *Swensen v. Buildings, Inc.*, 93 Idaho 466, 469, 463 P.2d 932, 935 (1970), and it is unnecessary to discuss this constitutional issue in view of our holding.

6. In view of our holding, we need not consider any other issues raised.

The dissent suggests that because the provision for alimony was part of a voluntary agreement entered into between the parties which was not merged into the court's decree, the agreement was "a bar to the court's authority to either increase the alimony or eliminate it altogether." Although it is generally true that a court has no authority to modify a property settlement agreement that has been merely ratified or approved by the court but not merged into the court's decree, the reason for this rule is that I.C. § 32–706 "expressly limits the court with respect to the matter of modification of support and maintenance and to the wife, to a modification of the court's orders; *if there is no such order embodied within a decree*, then there is nothing in this respect for the court to modify." *Bainbridge v. Bainbridge*, 75 Idaho 13, 23, 265 P.2d 662, 669 (1954) (emphasis added). The general rule, however, is not applicable in this case because in addition to stating in its decree that the property settlement agreement "is hereby ratified, confirmed and approved, but is not merged herein," *the trial court specifically ordered the defendant to make alimony payments.* Thus the court had continuing jurisdiction under I.C. § 32–706 to modify the alimony award. While an agreement in which the property distribution and alimony award are integrated may, under some circumstances regardless of merger, limit the authority of the court to modify the alimony award, *see Roesbery v. Roesbery*, 88 Idaho 514, 401 P.2d 805 (1965), neither party in this case raised the issue and, quite the contrary, *both parties* proceeded on the basis that the alimony award was subject to modification—which was also the apparent view of the trial judge who had entered the decree. Because neither party objected to the court's exercise of authority in modifying the alimony, this issue is removed from our consideration in reaching our decision. *See V–I Oil Company v. Lacy*, 97 Idaho 468, 469, 546 P.2d 1176, 1177 (1976); *M & I Timber Co. v. Hope Silver-Lead Mines, Inc.*, 91 Idaho 638, 643, 428 P.2d 955, 960 (1967).

Moreover, had either party felt any dissatisfaction with paragraph 4 of the decree which ordered alimony, attack on its incorporation therein could have been made in the trial court by appropriate motion. No member of this Court was privy to any of the conversations between counsel who represented the parties at the time the decree was entered, nor privy to any conversations between both counsel and the trial court. Hence, no one at this level can know but what all three knew exactly what was being done, the result of which was a decree which *ordered* both child support and alimony payments. It was within the province of the court to order child support no matter what the parties contractually agreed upon, and it certainly was not without the jurisdiction of the trial court to enter an award of alimony. It may have been erroneous, but certainly not without jurisdiction. That jurisdiction entails jurisdiction to commit error is as beyond dispute as is the proposition that error will not be presumed.

As to the second issue, however, we hold that inflation, cost-of-living increases, or devaluation of the dollar, however termed, are not sufficient, standing alone, absent any corresponding determination of the correlative needs and abilities of both parties, to modify an award of alimony. *See Ducote v. Ducote*, 339 So.2d 835 (La.1976); *Fakouri v. Perkins*, 322 So.2d 401 (La.App.1975). Accordingly, the decision of the trial court increasing alimony payments is reversed.[7] Correspondingly, since Mrs. Sullivan is no longer the prevailing party, the award of attorney's fees cannot stand.

The order modifying the final decree is reversed, with no costs allowed.

McFADDEN and DONALDSON, JJ., concur.

BAKES, C. J., concurs in the result.

SHEPARD, J., concurs in part and dissents in part.

BAKES, Chief Justice, concurring specially:

I concur in the result reached by the majority, but for the reasons expressed in the special concurring opinion of Shepard, J., that the alimony provision in the integrated property settlement agreement which was not merged in the decree was not modifiable by the court under the doctrine laid down in *Phillips v. Phillips*, 93 Idaho 384, 462 P.2d 49 (1969). Merger depends not so much upon what the trial court may or may not order, but upon whether or not the parties intend that a judicial determination of their marital affairs be substituted for their previous contractual settlement. Where the record is clear, as it is here, that neither the parties nor the court intend the original settlement agreement to be supplanted by a judicial decree, then no merger has occurred, and the parties' rights are to be determined by their marital contract.

McFADDEN, Justice, specially concurring.

I concur in the opinion authored by Bistline, J. However, in view of the opinion of Shepard, J., wherein he concurs in part and dissents in part, I feel I should explain my position insofar as the case of *Phillips v. Phillips*, 93 Idaho 384, 462 P.2d 49 (1969), is concerned.

In *Phillips* this court discussed the import of the doctrine of merger insofar as the effect it has on a separation agreement of the parties when the provisions of that decree are "merged" in a divorce decree. Therein the court stated at 386, 462 P.2d 49:

"If the agreement *is so merged* into the decree, the rights and duties of the parties are no longer determined by reference to the agreement or contract of the parties, but rather are determined by and enforced through the judgment and the decree of the court."

I continue to adhere to that statement.

In the instant case after the proceedings for divorce had been instituted the parties entered into a "Property Settlement Agreement" wherein the parties agreed as to what property was their community property, and also listed the separate property of the husband. The agreement also made provision for the support and maintenance of their minor children, and also provided for the husband to pay the wife $800 per month as alimony as long as she remained unmarried and living. These monthly payments could be increased by an increase in the cost of living index up to $850 per month.

The property settlement agreement also provided that in the pending divorce proceedings, if a divorce be granted to either or both parties, it was to be controlling as

---

7. Counsel for Mrs. Sullivan acknowledges in his brief that the judgment in her favor would have to be reversed if she had relied solely on the rate of inflation to prove her case. Counsel argues, however, that he has shown a material change in circumstances justifying an increase by showing the effect that inflation has had on Mrs. Sullivan's living expenses. The decision of the trial court, however, was based solely on the effect of inflation on her allowance. As we have held above, a holding that inflation has reduced the value of alimony payments by itself cannot support an increase in those payments.

to the property settlement and should be submitted to the court for approval "but not merged as a part of judgment."

The original decree of divorce entered on November 25, 1969, insofar as alimony was concerned, provided:

"That the defendant is ordered and directed to pay to the Clerk of the District Court of Ada County, State of Idaho, on or before the 15th day of each and every month, the sum of $800 per month *as alimony*, so long as the plaintiff lives and remains unmarried, and the Clerk is hereby directed to pay said amount to plaintiff; provided, however, that the award *for alimony* be adjusted to reflect the increases in the cost of living index prepared by the Bureau of Labor Statistics of the United States Government between January 1 and December 31 of each year, commencing with the year 1971, and further provided that said adjustments by reason of cost of living increases shall not cause the alimony to exceed $850.00 per month."

When the trial court ordered Mr. Sullivan to pay $800 per month (plus cost of living increases up to $850 per month) as alimony, it disregarded the nonmerger provisions of the property settlement agreement as concerned alimony. If Mr. Sullivan was dissatisfied with that portion of the decree, insofar as it split the alimony provisions from the property settlement provisions of the agreement, it was incumbent upon him to appeal from that portion of the decree, which he did not do. The effect of the provision of the decree insofar as alimony is concerned brought it within the jurisdiction of the court to modify. I.C. § 32–706 (as it existed at the time of modification). *Turner v. Turner*, 90 Idaho 308, 410 P.2d 648 (1966); *Phillips v. Phillips, supra.*

No appeal having been taken from that portion of the decree, it became res judicata as to the authority of the court to modify the alimony award as an independent provision separate from the provisions of the property settlement agreement pertaining to division of the property.

SHEPARD, Justice, concurring in part and dissenting in part.

While I concur in the result, I disagree with the rationale by which the majority arrives at its result. In my judgment, the majority opinion says too much and at the same time says too little. The majority holds correctly that inflation cannot be the sole factor in awarding an increase in alimony, but strongly infers that in the instant case an increase in alimony would be upheld if the trial court had found such to be necessary. At the same time the majority fails to consider appellant's assertion that alimony should be eliminated altogether based on the unconstitutionality of the then existing alimony statute or alternatively on the ground of lack of need. Lastly, the majority fails to consider the fact that the alimony requirement was but part of a voluntary agreement entered into between the parties, not merged into the decree, hence enforceable as an independent contractual obligation and thus a bar to the court's authority to either increase the alimony or eliminate it altogether.

In the instant case, the record demonstrates that neither of the parties are impecunious. At the time of the divorce, I interpret the record as indicating that the husband was earning approximately $26,000 per year. At that time the net value of the community property was approximately $210,000. The family home of over 3,700 square feet, located in a view oriented, prestigious neighborhood, was not valued at the time of the divorce, but at the time of the modification hearing appears to be of a value of approximately $125,000. At the time of the divorce the mortgage indebtedness against the house was approximately $24,000; at the time of the modification hearing it was $12,000; and the monthly payments at the time of the modification hearing were $304. It was agreed between the parties that the community home was awarded to the wife subject to the indebtedness which she assumed and agreed to pay. The wife also received all household goods and furnishings, together with two automobiles. Husband and wife were each

awarded 16,700 shares of Continental Life and Accident Company. The record does not reflect a valuation of said stock at the time of the parties' agreement, but as of the date of the modification hearing said stock was valued at approximately $5.00 per share. The husband had separate property of evidently substantial value, from which it was agreed that he would transfer to the wife some 700 shares of Albertson's, Inc. Again, the record does not reflect the valuation of that stock at the time of the separation agreement, however, the stock was valued at approximately $30 to $35 per share at the time of the modification hearing. At the time of the separation agreement two children were minors and the husband agreed to pay support therefor. At the time of the modification hearing all children of the parties had reached their majority.

As of the time of the modification hearing, the plaintiff continued to live in the residence. The trial court found that she was employed as a real estate salesperson earning $2,600 per year. She testified that she needed between $3,500 and $5,000 a month to live on. The trial court found that she possessed assets of approximately $300,000. The record indicates that her stockholdings in Continental have grown to 26,895 shares. She also purchased real property described as a townhouse for $56,000, on which she has placed a sale price of $85,000. The trial court found that neither of the parties have any obligations for the education of their children, however, plaintiff desires to keep and maintain her residence so she may be able to entertain her children and grandchildren.

On the other hand, the trial court found that because of the "fortitude and business acuity" of the defendant, his assets at the time of hearing were approximately $1,000,000 in value.

Plaintiff petitioned for an increase in alimony to $2,500 per month. At that time defendant's gross income was approximately $68,000 per year, on which he paid approximately $19,000 in federal tax. He was also paying plaintiff $10,200 per year in alimony.

Thus, I deem there to be a number of interesting questions raised. Is a wife with the above described assets to be determined so impecunious as to *need* an increase in alimony? May an ex-wife claim inability to support herself by maintaining her assets of $300,000 in a manner which produces only $5,000 in income? (The assets appear readily marketable and if otherwise invested I would judicially notice would produce income conservatively estimated at $35,000 to $40,000 per year.)

On the other hand, should defendant be required to pay alimony of $30,000 per year from his net income, which is less than $49,000 per year? Should he be required to invade his capital for such increase in alimony when she clearly has no desire to so invade hers?

Should an ex-wife be required to exert herself to obtain and maintain significant employment as a means of supporting herself? In the instant case, the trial court found that plaintiff-petitioner earned $2,600 per year. The trial court also found that plaintiff-petitioner had a "rather vague physical disability" which gives her back pain, but the record reveals such was evidently no impediment to her three-week skiing vacation in Europe or other trips to Spain and the Holy Land.

I would hold, based on the above and putting aside the erroneous trial court ruling based on the impact of inflation, no sufficient evidence has been presented warranting an increase in alimony.

The majority opinion also fails to deal with the issue clearly raised by defendant that alimony, in any event, should be eliminated altogether in that the statute authorizing a court to award alimony to a wife is unconstitutional under the holding of Orr v. Orr, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979). There it was held that a statute authorizing alimony only to a wife is impermissibly violative of the Equal Protection Clause of the Fourteenth Amendment.

Putting all of the above aside, nevertheless, what is, in my judgment, the dispositive issue in the case is not touched upon by the majority opinion. Here, prior to the divorce, the parties entered into a settle-

ment agreement which purports to resolve all differences between the parties regarding property division, child custody, child support, alimony, and any future possible obligations between the parties. Therein it is recited that each of the parties were represented by counsel, were familiar with the terms and conditions of the agreement, and recognized it to be fair, equitable and proper. Signatures on the agreement indicate that it was approved by counsel for each of the parties. Therein it is indicated that each of the parties "waives, forfeits and relinquishes" any future right to earnings of the other or any rights of inheritance. Of most importance, however, is the provision of that agreement which indicates the existence of the divorce proceeding then pending in court and indicates "this agreement shall be submitted to the court for approval *but not merged as a part of judgment.*" In the judgment and decree of divorce, it is recited that the agreement of the parties "is hereby ratified, confirmed and approved, *but is not merged herein.*"

In my judgment, that provision of the decree totally rebuts the argument of McFadden, J., in his special concurrence. The trial court in the original decree clearly and explicitly held that the agreement was not merged into the decree. It would have been absurd for Sullivan to appeal.

A unanimous Court in *Phillips v. Phillips,* 93 Idaho 384, 386, 462 P.2d 49, 51 (1969), discussed the doctrine of merger, and stated:

"The import of the doctrine of merger is that when a separation agreement is submitted to a court in connection with a divorce action *and it is merged* into the decree, all provisions are thereafter enforceable by the court as a part of its decree and may at a later time be modified by the court. If the agreement *is so merged* into the decree, the rights and duties of the parties are no longer determined by reference to the agreement or contract of the parties, but rather are determined by and enforced through the judgment and the decree of the court." (Emphasis added.)

I take it that the converse is also true and in the event the agreement is not so merged into the decree, the rights and duties of the parties continue to be determined by the agreement and may not at a later time be modified by the court. As the Court stated in *Phillips,*

"Using the present facts as an example, it is argued by appellant that she agreed to accept the property division only because of the existence of the alimony provision and while the property division was fair and equitable insolong as the alimony was to be continued *ad infinitum,* it is not fair or equitable absent the continued alimony." *Id.*

In the instant case, it would appear that defendant can clearly argue that his agreement regarding the division of the community property, the wife's obtention of husband's separate property and the provisions of child custody and child support were all contingent upon the wife's acceptance of a maximum of $850 per month permanent alimony and that he would not have agreed to the other terms if the alimony was subject to increase beyond $850. On the other hand, I believe the wife may argue the correlative, *i.e.,* that she would not have agreed to the other terms of the agreement had she known that some time in the future the husband might contend that alimony should be eliminated altogether. In short, it is my judgment, pursuant to *Phillips v. Phillips, supra,* that the terms of the agreement were integrated and interdependent each upon the other and each constituted consideration for the other. In short, the bargain having been struck, it cannot be undone by either of the parties in the absence of fraud, overreaching or failure of consideration, none of which is alleged herein.

Those same considerations were present in *Orr v. Orr,* 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979), and although the existence of such an agreement in *Orr* did not prevent the court from holding the statute unconstitutional, it was particularly noted in all the opinions that the impact of such an agreement was a matter for resolution by state law in state courts. As stated in the *Orr* majority, "Thus, it may be that despite the unconstitutionality of the alimo-

ny statutes, Mr. Orr may have a continuing obligation to his former wife based on that agreement—in essence, a matter of state contract law."

Hence, I agree that the majority has reached a correct result, but I would so hold on the basis that any modification of the alimony obligation is barred by the terms of the contract between the parties. Also, I would reverse the trial court's award of attorney fees to plaintiff-petitioner on the additional ground that such is barred by the contract of the parties.