766 P.2d 1219

**Mary C. SPENCER–STEED**
**Plaintiff–Respondent,**
**Cross–Appellant,**

**v.**

**David A. SPENCER,**
**Defendant–Appellant,**
**Cross–Respondent.**

**No. 17150.**

Supreme Court of Idaho.

Dec. 21, 1988.

Clark & Feeney, Lewiston, for defendant-appellant, cross-respondent. Paul T. Clark argued.

Randall, Blake, Cox, Risley & Trout, Lewiston, for plaintiff-respondent, cross-appellant. Kim Jay Trout argued.

JOHNSON, Justice.

This is a contract action to enforce portions of a property settlement, custody, support and maintenance agreement that provided for alimony and that was alleged to provide for support for an adult child. The principal issues are whether the agreement was merged into the divorce decree, whether the agreement provided for support for the adult child, and whether there was a basis for the punitive damages claim. We hold that the agreement was not merged into the divorce decree, that the agreement is ambiguous as to whether it provides support for the adult child, and that there was no basis for the punitive damages claim.

## I.

### THE AGREEMENT

Mary and David were married to each other from 1961 until January 1982. In December 1981 they entered into a property settlement, custody, support and maintenance agreement (the agreement). The agreement stated that it was intended to set forth, among other things, their agreement concerning the support and maintenance of their three minor children and of Mary. The names and dates of birth of the children were stated in the agreement to be: Grant, born May 22, 1966; Craig, born May 22, 1969; and Angela, born June 29, 1970. In the agreement Mary and David jointly requested that the court having jurisdiction of a pending divorce action between them in Nez Perce County, Idaho ratify, confirm and approve the agreement, but that the agreement should not be merged into or incorporated in any decree of divorce. They also agreed that the entire agreement was "an integrated agreement," with every provision or term constituting consideration for each and every other provision or term of the agreement. They agreed in particular that the provisions relating to a division of property and the provisions relating to David's obligation to provide for the support and maintenance of Mary "constitute reciprocal consideration."

The agreement contained the following section concerning the support of the minor children:

### SUPPORT OF MINOR CHILDREN

Subject to approval of the Court having jurisdiction of the pending divorce action HUSBAND agrees to pay to

WIFE, commencing with the month of September, 1981, the sum of $333.33 per month for the support and maintenance of GRANT S. SPENCER, the sum of $333.33 per month for the support and maintenance of CRAIG R. SPENCER, and the sum of $333.34 per month for the support and maintenance of ANGELA SPENCER. Such support payments shall be made by HUSBAND directly to WIFE, the parties hereby requesting the Court having jurisdiction of the pending divorce action to enter an order directing that all child support payments be paid directly to WIFE rather than through the Clerk of the District Court, the parties hereto deeming it to be in the best interests of all parties and of said minor children if such support payments were ordered paid directly to WIFE.

The support payments provided for hereinabove and hereinbelow shall be due and payable on the 10th day of each and every calendar month, commencing with the month of September, 1981, and shall continue thereafter to and including the month of August, 1985, or until the calendar month following the month in which WIFE should remarry, whichever first occurs.

Commencing with the month of September, 1985, or commencing with the calendar month immediately following the month in which WIFE should remarry, whichever first occurs, HUSBAND agrees to pay to WIFE for the support and maintenance of those of the children of the parties hereto who are then yet minors the sum of $500.00 per month per child, increased by a percentage thereof equal to 80% of the percentage increase, if any, in the Consumer Price Index for the All Items Group as published by the Bureau of Labor Statistics of the United States for the month of September, 1981, as compared to either the month of July, 1985, or the calendar month in which WIFE should remarry, whichever shall first occur.

For purposes of illustration, and by way of example only, assume:

(1) that such Consumer Price Index for the month of September, 1981, is 225, and that such Consumer Price Index for the month of July, 1985, or the calendar month in which WIFE remarries (should WIFE remarry before July, 1985), is 300;

(2) the percentage increase in the Consumer Price Index is 33⅓% (i.e., 300 − 225 = 75; 75 divided by 225 = 33⅓% increase in the Consumer Price Index); (3) eighty (80%) percent of 33⅓% equals 26.6%;

(4) the amount of child support for each child, commencing either the month of September, 1985 or commencing the calendar month following the month in which WIFE should remarry, whichever first occurs, will be $500.00, increased by 26.6% thereof, or a total for each child per month of $633.00.

So long as HUSBAND is not in default in payment of the child support herein agreed to be paid, HUSBAND shall be entitled to claim said minor children, and each of them, as dependents for federal and state income tax purposes.

HUSBAND further agrees to keep and maintain, at his sole cost, such insurance as will pay the cost of providing medical and dental care and hospitalization, and all costs of medical and dental prostheses and appliances, and medicine or drugs as shall be prescribed by a physician or dentist for each of the minor children of the parties hereto. At such time as the HUSBAND'S duty to provide for the support and maintenance of any child of the parties hereto shall terminate, HUSBAND shall be under no obligation to provide such insurance or pay any medical or dental expenses for such child. HUSBAND further agrees to pay all such costs to the extent of any such costs are not covered by such insurance; it being the express intent of this provision that HUSBAND will pay the costs of providing medical care, dental care, hospitalization, medical and dental prostheses and appliances, and medicine or drugs as shall be prescribed by a physician or dentist for each minor child so long as HUSBAND is obligated to

provide for the support and maintenance of such minor children regardless of whether or not any such costs are covered by any such insurance, or to the extent that any such costs are not covered by any such insurance.

The alimony provisions of the agreement stated, in part:

### ALIMONY FOR THE MAINTENANCE AND SUPPORT OF WIFE

HUSBAND agrees to pay to WIFE, as alimony for the support and maintenance of WIFE the following sums:

(a) the sum of TWO THOUSAND FIVE HUNDRED ($2,500) DOLLARS per month for a period of thirty-six (36) consecutive months, commencing with the month of September, 1981, and each such monthly payment shall be due and payable on or before the last day of each and every such month; provided, however, that in addition to said monthly payments, HUSBAND further agrees to pay to WIFE, as alimony for the support and maintenance of WIFE, an additional sum of $8,000, which said sum shall be due and payable immediately upon entry of a decree of divorce in the above entitled matter, and which said sum shall be in addition to the regular monthly payment of $2,500 due for the month in which such decree of divorce is entered; and

(b) the sum of TWO THOUSAND ONE HUNDRED FIFTY ($2,150) DOLLARS per month for a period of twelve (12) consecutive months, commencing with the month of September, 1984; such monthly payments under this Subparagraph (b) shall be due and payable on or before the last day of September, 1984, and each succeeding monthly payment under this Subparagraph (b) shall be due and payable on or before the last day of each of the next succeeding 11 calendar months.

. . . .

HUSBAND'S obligation to pay support and maintenance to WIFE under Subparagraphs (a) and (b) of this Paragraph VII, shall terminate upon the first of the following events to occur:

(i) the death of WIFE;

(ii) the remarriage of WIFE.

. . . .

Upon the death or remarriage of WIFE, whichever shall first occur, HUSBAND shall be under no further obligation to make any payments of alimony to WIFE for her support and maintenance under the provisions of Subparagraphs (a) or (b), and neither WIFE nor her estate shall, following her death or remarriage, be required to refund to HUSBAND any sums theretofore paid by HUSBAND to WIFE for her support and maintenance pursuant to the provisions of Subparagraphs (a) and (b).

. . . .

The agreement also contained a provision entitling the prevailing party to attorney fees in any suit or action to enforce, or for the breach of, any of the terms conditions or covenants of the agreement.

### II.

### THE DECREE OF DIVORCE

In January 1982 a decree of divorce (the decree) was entered in the district court in Nez Perce County, Idaho, granting David a divorce from Mary. The decree contained the following order concerning child support:

Plaintiff is hereby ordered to pay to the defendant for the care, maintenance and support of said minor children the sum of $333.33 per month; that said support shall be paid directly to the defendant, rather than through the Clerk of the District Court.

Said support payments provided for hereinabove and hereinbelow shall be due and payable on the 10th day of each and every calendar month commencing with the month of September, 1981, and shall continue thereafter to and including the month of August, 1985, or until the calendar month following the month in which the defendant should remarry, whichever first occurs.

Commencing with the month of September, 1985, or commencing with the calendar month immediately following the month in which the defendant should remarry, whichever first occurs, plaintiff shall pay to the defendant for the support and maintenance of those of the children of the parties hereto who are then yet minors the sum of $500.00 per month per child, increased by a percentage thereof equal to 80% of the percentage increase, if any, in the Consumer Price Index for the All Items Group as published by the Bureau of Labor Statistics of the United States Department of Labor for the month of September, 1981, as compared to either the month of July, 1985, or the calendar month in which the defendant should remarry, whichever shall first occur. Such percentage increase shall be computed as set forth in the Property Settlement, Custody, Support and Maintenance Agreement which the parties entered into during the pendency of this action.

As long as plaintiff is not in default in payment of child support, he shall be entitled to claim said minor children, and each of them, as dependents for federal and state income tax purposes.

In addition, the plaintiff is hereby ordered to keep and maintain, at his sole costs, such insurance as will pay the cost of providing medical and dental care and hospitalization, and all costs of medical and dental prostheses and appliances, and medicine or drugs as shall be prescribed by a physician or dentist for each of the minor children of the parties hereto. At such time as the plaintiff's duty to provide for the support and maintenance of any child of the parties hereto shall terminate, plaintiff shall be under no obligation to provide such insurance or pay any medical or dental expenses for such child. The plaintiff will pay the costs of providing medical care, dental care, hospitalization, medical and dental prostheses and appliances, and medicines and drugs as shall be prescribed by a *physician* or dentist for each minor child so long as plaintiff is obligated to provide for the support and maintenance of such minor children regardless of whether or not any such costs are covered by any such insurance, or to the extent that any such costs are not covered by any such insurance.

The decree also ratified, confirmed, and approved the agreement, which was admitted as an exhibit in the case. The decree specifically stated that the agreement was neither merged into nor incorporated in the decree but did order David to pay to Mary alimony as set forth in the agreement.

## III.

### THE PRIOR PROCEEDINGS

In January 1986 Mary filed a complaint alleging that David had breached the agreement by failing to pay child support for Grant from June 1984 through September 1985 and by failing to pay alimony to Mary for August 1985. The complaint also sought punitive damages on the ground that David's failure to pay alimony for the month of August 1985 was "willful, intentional, vexatious, [and] intended to place [Mary] in economic difficulty."

David filed a motion to dismiss the complaint for lack of jurisdiction over the subject matter, for failure to state a claim upon which relief could be granted, and because there was another action between the same parties over the same subject matter.

Mary filed a motion for summary judgment supported by an affidavit. The affidavit stated that David had failed and refused to pay support for Grant beginning with the month of June 1984. It also stated:

David A. Spencer advised your affiant on August 10, 1985, that he had no intention of paying the final month's alimony despite his acknowledgement that it was, in fact, due and owing and that David A. Spencer well knew of your affiant's lack of funds with which to pay current bills and intentionally withheld said payment from your affiant.

David filed an affidavit in opposition to the motion for summary judgment stating that

343

Grant had reached the age of 18 on May 22, 1984. The affidavit also stated that to David's best knowledge and belief Mary was living with and cohabiting with a man during the month of August 1985, and had married the man on August 31, 1985. The affidavit asserted that the cohabitation and marriage were in derogation of the spirit of the agreement.

Following a hearing on the motion to dismiss and the motion for summary judgment, the magistrate ruled that the agreement was not merged into the decree and denied the motion to dismiss. The magistrate found that the agreement did not provide for support for any of the children after they reached the age of majority and granted summary judgment against Mary on her claim that David was obligated to pay support for Grant after he became an adult. The magistrate awarded alimony to Mary for the month of August 1985, but ruled as a matter of law that Mary was not entitled to punitive damages. The magistrate reserved the award of attorney fees pending the filing of memoranda of costs by the attorneys for the parties.

Mary appealed the decision of the magistrate on the issues of child support and punitive damages to the district judges division of the district court. David cross-appealed on the issue of the denial of his motion to dismiss. The district judge heard the matter as an appellate proceeding.

The district judge agreed with the magistrate that the agreement was not merged into the decree and affirmed the denial of David's motion to dismiss. The district judge interpreted the agreement as requiring David to pay support for Grant through August 1985, and remanded the case to the magistrate for entry of judgment in favor of Mary on that issue. The district judge affirmed the summary judgment against Mary on her claim for punitive damages, awarded Mary attorney fees on appeal, and remanded the case to the magistrate for a determination of attorney fees on the summary judgment proceedings before the magistrate. On remand the magistrate entered judgment for Mary for child support, alimony, interest, and attorney fees for the

proceedings before the magistrate and for the appeal to the district judge.

David filed this appeal challenging the denial of his motion to dismiss and the granting of judgment for child support. Mary cross-appealed the dismissal of her claim for punitive damages.

IV.

THE AGREEMENT WAS NOT MERGED INTO THE DECREE. MARY WAS ENTITLED TO BRING A CONTRACT ACTION TO ENFORCE THE AGREEMENT.

David contends that Mary should not be permitted to bring a contract action to seek support for Grant after he reached majority and for alimony for herself. He argues that the portion of the agreement upon which the claim for child support is based was embodied in the decree and therefore should be enforceable only through the decree. He also contends that although the decree stated that the agreement was not merged into the decree, the decree ordered him to pay alimony as set forth in the agreement. Therefore, he argues, alimony should be enforceable only through the decree.

We agree with the magistrate and the district judge that the trial court had jurisdiction to entertain Mary's actions for support for Grant after he reached majority and for alimony. Where there is clear and convincing evidence that the parties to a separation agreement intended that the agreement be integrated and would not be merged into the decree of divorce, any presumptions to the contrary are rebutted. *Phillips v. Phillips*, 93 Idaho 384, 387, 462 P.2d 49, 452 (1969). Here, the agreement specifically provided that it was integrated and would not be merged.

The fact that the decree contained a provision for child support substantially identical with that contained in the agreement does not defeat Mary's right to bring this action seeking to require David to pay support for Grant after he became an adult. The district courts have continuing jurisdiction to enforce and, if necessary, to modify

their decrees relating to minor children. *Id.* This continuing jurisdiction does not apply to an agreement to support an adult child.

The inclusion in the decree of the provision upon which Mary based her claim for Grant's support after his majority did not constitute a merger of that provision in the decree. That provision was in the decree only to implement the continuing jurisdiction of the court with regard to support for minor children. The clearly stated intention of the parties that the agreement was integrated and that the agreement was not to be merged in the decree negate the merger into the decree of any provision for the support of an adult child.

■ Likewise, the statement in the decree that David was ordered to pay the alimony set forth in the agreement did not constitute a merger of the alimony provision of the agreement into the decree. The comments of Justice Bistline in *Sullivan v. Sullivan,* 102 Idaho 737, 739, 639 P.2d 435, 437 n. 6 (1981) do not contradict this result. There, Justice Bistline pointed out that the order to pay alimony contained in the decree would be enforceable only through the decree, despite the fact that the agreement for alimony had not been merged into the decree, where *"the trial court specifically ordered the defendant to make alimony payments."* *Id.* "Mrs. Sullivan asked for judgment awarding her alimony of $800 per month, to be adjusted to reflect the increases in the Cost of Living Index, with a ceiling of $850 per month, and that the court approve and confirm the Property Settlement and Custody Agreement." (Footnote omitted.) *Id.* at 738, 639 P.2d at 436. The court decreed alimony in these amounts. *Id.* Here, there is nothing in the decree to enforce, since the amount of alimony and the terms and conditions of payment are not set forth in the decree.

This result is consistent with the decisions of this Court for more than 30 years. In *Bainbridge v. Bainbridge,* 75 Idaho 13, 18, 265 P.2d 662, 665 (1954) the decree "approved and confirmed" an agreement that was an exhibit in the case and ordered and directed the parties "to comply with

the provisions thereof." This court held that "there was no incorporation of the terms of the agreement in the divorce decree; that the agreement is not superseded by the decree but stands independent thereof and the obligations imposed under the agreement are not those imposed by decree but by contract,...." *Id.* at 23–24, 265 P.2d at 669. *See also, Turner v. Turner,* 90 Idaho 308, 410 P.2d 648 (1966); and *Phillips v. Phillips; Roesbery v. Roesbery,* 88 Idaho 514, 401 P.2d 805 (1965); *Kimball v. Kimball,* 83 Idaho 12, 356 P.2d 919 (1960).

Since there was no merger of the agreement into the decree, Mary was entitled to bring a contract action to enforce the agreement. The magistrate and the district judge correctly denied David's motion to dismiss.

V.

## THE AGREEMENT IS AMBIGUOUS AS TO WHETHER IT PROVIDED SUPPORT FOR GRANT WHEN HE BECAME AN ADULT

■ We disagree with the district judge's reading of the agreement concerning support for Grant after he reached majority. In order to discover the intention of the parties the agreement must be construed as a whole and considered in its entirety. *Wing v. Martin,* 107 Idaho 267, 273, 688 P.2d 1172, 1178 (1984); *Beal v. Mars Larsen Ranch Corp.,* 99 Idaho 662, 668, 586 P.2d 1378, 1384 (1978).

The recitals in the agreement state that the parties had reached an agreement concerning David's obligation to provide support and maintenance for the minor children and that it was the intent of the parties to set forth that agreement. Section VI of the agreement is entitled "SUPPORT OF MINOR CHILDREN." The children were ages 15, 12, and 11, respectively, when the agreement was signed. The parties specified the amount of support payments for each of their minor children and requested the court to order the child support payments to be paid directly to Mary rather than through the clerk of the court,

"the parties hereto deeming it to be in the best interests of all parties and of said minor children if such support payments were ordered paid directly to [Mary]." The next paragraph states:

The support payments provided for hereinabove and hereinbelow shall be due and payable on the 10th day of each and every calendar month, commencing with the month of September, 1981, and shall continue thereafter to and including the month of August, 1985, or until the calendar month following the month in which [Mary] should remarry, whichever first occurs.

The agreement then provides for the increase of the child support payments to $500 per month for those children "who are then yet minors" in September 1985 or in the month immediately following the month in which Mary should remarry, whichever first occurs. Only if a contract is reasonably subject to conflicting interpretation may we find it to be ambiguous. *International Engineering Co. v. Daum Industries, Inc.*, 102 Idaho 363, 365, 630 P.2d 155, 157 (1981). Construing the agreement as a whole and considering it in its entirety, we find that it is reasonably subject to conflicting interpretations on this point. We reverse the decision of the district judge and remand for resolution of this ambiguity by the magistrate after hearing any admissible evidence offered by the parties.

## VI.

### THERE WAS NO BASIS FOR A PUNITIVE DAMAGE CLAIM

█ We agree with the magistrate and the district judge that as a matter of law Mary was not entitled to punitive damages because of David's failure to pay alimony for the month of August 1985 as required by the agreement.

In *Linscott v. Rainier Nat. Ins. Co.*, 100 Idaho 854, 861, 606 P.2d 958, 965 (1980) Justice McFadden writing for the Court succinctly stated the rule regarding the award of punitive damages in contract cases:

Punitive damages may only be considered in [ordinary breach of contract] cases where there has been alleged in the pleadings and proof of conduct by one party involving some element of outrage similar to that usually found in the commission of crimes or torts done intentionally or with reckless indifference to the rights of the other party (e.g. fraud) or with an evil motive, (e.g. to vex, harass, annoy, injure or oppress) in conscious disregard of the rights of the injured person.

(Citations omitted.)

Here, Mary did allege in her unverified complaint that David's breach of the alimony provision of the agreement was vexatious and intended to place her in economic difficulty. However, in the affidavit in support of her motion for summary judgment she stated only that David had advised her that he had no intention of paying the final month's alimony, despite his acknowledgement that it was due and owing, and that he well knew of her lack of funds with which to pay current bills and intentionally withheld the payment. Even construing this sworn assertion liberally and drawing every reasonable inference from it as we are required to do, *Doe v. Durtschi*, 110 Idaho 466, 469–70, 716 P.2d 1238, 1241–42 (1986), there was no genuine issue of material fact that would entitle Mary to litigate the issue of punitive damages. David was entitled to summary judgment as a matter of law on this issue, even though he had not moved for summary judgment. *Juker v. American Livestock Insurance Co.*, 102 Idaho 644, 645, 637 P.2d 792, 793 (1981).

## VII.

### CONCLUSION

We affirm the denial of David's motion to dismiss and the granting of summary judgment to David as to Mary's claim for punitive damages. We reverse the judgment against David for child support for Grant after he reached majority and remand for further proceedings consistent with our decision.

On remand, the magistrate shall consider the appropriate award of attorney fees related to the proceedings before the magistrate and on appeal to the district judge. I.R.C.P. 54(d)(1)(B) (1987). In doing so, the magistrate should take into account that the award of alimony to Mary, pursuant to the agreement, was not appealed to this Court and remains intact. The magistrate should also consider that we have affirmed Mary's right to enforce the agreement through this action, but that her claim for child support for Grant after his majority has been remanded to the magistrate for resolution of the ambiguity in the agreement.

On appeal, we conclude that there was no prevailing party, and therefore, award no attorney fees or costs. *Cf., International Engineering Co. v. Daum Industries, Inc.*

BAKES and HUNTLEY, JJ., and TOWLES, J., Pro Tem., concur.

SHEPARD, C.J., sat but did not participate.

HUNTLEY, Justice, concurring specially.

I concur fully in the majority opinion but would state my specific reasons for concurring in Part V.

I personally read the agreement as unambiguously providing for support for the son Grant through August 1985, but since the two trial judges as well as members of this Court have disagreed as to the meaning of the agreement, apparently it is ambiguous.

My reading follows the following line of reasoning:

The early recitals in the agreement stated the parties are providing for the custody and support of their minor children. Paragraph VI is entitled "SUPPORT OF MINOR CHILDREN." At the December 1981 date the agreement was executed the children were *then* minors, being ages 15, 12 and 11 respectively. Counsel for husband argues that the foregoing uses of the word "minor" indicate no support will be paid beyond majority.

To test that argument we must read the text of the several paragraphs which follow the heading. As to the eldest child, Grant, whose support beyond age 18 is being questioned, the text reads as follows in a skeletonized fashion:

(1) Husband agrees to pay Wife $333.33 per month for support of Grant.

(2) Payments under (1) are to commence September 1981 and continue to and including August 1985. (Note— Grant became 18 in May 1984.)

(3) Commencing September 1, 1985, payment for the children "who are then *yet minors*" will be $500 each per month.

Thus, the payments were a level $1,000 per month both before and after August 1985 (subject to the adjustment for the Price Index formula) and two things indicate the parties knew Grant would come of age and still receive payments for 13 more months.

1. Paragraph 2 referred to "Grant," not "minor child," as receiving payment to the *date certain*, August 1985; and

2. Paragraph 3 made the adjustment to keep the figure at $1,000 per month by reference to children who are "yet minors."

TOWLES, J., Pro Tem., concurs.