780 P.2d 149

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Lyle Edison WHITEHAWK,
Defendant–Appellant.**

**No. 17271.**

Court of Appeals of Idaho.

June 29, 1989.

Petition for Review Granted
Sept. 18, 1989.

E. Lee Schlender, Hailey, for defendant-appellant.

Jim Jones, Atty. Gen., Michael J. Kane, Deputy Atty. Gen., for plaintiff-respondent.

SWANSTROM, Judge.

Lyle Whitehawk appeals from a judgment imposing an indeterminate sixteen-year sentence for the crime of lewd conduct with a child under sixteen. He contends that the district court committed several errors which may be summarized as: (1) whether the court breached the terms of a plea agreement and thereafter failed to allow Whitehawk to withdraw or change his plea; (2) whether the court erred in

admitting into evidence, for the purpose of sentencing, a psychological evaluation of Whitehawk; and (3) whether the court abused its discretion in sentencing Whitehawk to an indeterminate term of sixteen years. For the following reasons, we affirm.

The criminal charge against Whitehawk arose out of allegations that he had sexually abused his eleven-year old stepdaughter. Whitehawk was originally charged with the crime of rape and was found guilty by a jury. This verdict was later set aside on the ground that the jury list for the trial improperly excluded a majority of the American Indian population in Power County. Before a new trial could be held, Whitehawk entered into a plea agreement with the state. Pursuant to the agreement, Whitehawk pled guilty to the offense of lewd conduct with a child under sixteen, I.C. § 18-1508. The agreement provided that in exchange for Whitehawk's guilty plea the court would withhold judgment and grant Whitehawk probation. The agreement contained a proviso that Whitehawk would consent to a psychological examination. The court would then consider the results of this examination, Whitehawk's mental condition, and the result of his presentence investigation report. If the court determined that Whitehawk presented a risk to society or if he was a pedophile, the court would not be bound to the previous limitations but could sentence Whitehawk within its discretion.

The court did receive a presentence investigation report and a psychological report. Both reports recommended incarceration. The court concluded Whitehawk was a pedophile and posed a danger to society. Whitehawk was sentenced to an indeterminate term not to exceed sixteen years. The court retained jurisdiction for 180 days, allowing Whitehawk to be enrolled in a sex offender program at the North Idaho Correctional Institution. After this period the court relinquished jurisdiction, requiring Whitehawk to remain incarcerated in the custody of the Idaho Board of Correction under the sentence previously imposed. This appeal followed.

We first turn to the validity and effect of his plea agreement. Whitehawk contends that the district court erred by failing to inform him that the court could reject the plea agreement and by failing to inform him of the possible consequences of such rejection. He contends that the court should not have rejected the agreement without telling Whitehawk that he had the right to withdraw his guilty plea. These arguments must be examined in regard to the circumstances from which they arose.

Retrial of the rape charge was set to commence December 15, 1986. However, on December 11, Whitehawk pled guilty to a substituted charge of lewd conduct with a minor, pursuant to the plea agreement. The court was concerned about the finality of the plea and the decision not to go forward with a second jury trial. The court had this discussion:

THE COURT: Let me ask some questions, Mr. [Prosecutor].

Mr. Whitehawk, you understand, sir, that the Court is going to appoint a psychologist or psychiatrist to examine you if I accept this plea of guilty, and if the individual selected issues a report that you present a risk of danger to the public at large or are a pedophiliac, then this agreement or the sentencing recommendation by counsel that you receive a withheld judgment and the rest of it will not be binding on the Court. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Because this is going to be over with today. I want you to know that I'm not going to allow you to withdraw your plea of guilty at any time after today. Do you understand?

THE DEFENDANT: Yes, Your Honor.

THE COURT: I won't allow you to withdraw your plea of guilty because this case is going to come to a conclusion right now. So if you have any doubts about wanting to plead guilty to this charge, say so now and then you can go to trial on the 15th.

THE DEFENDANT: I understand, Your Honor.

Shortly before the above exchange took place, the prosecutor wanted to make his understanding clear that the guilty plea, once entered, could not be withdrawn in the event the court determined from the reports submitted to it, that Whitehawk "presents a risk of danger to the public at large, or is a pedophiliac." The prosecutor inquired whether his understanding was correct. Defense counsel replied that it was. He said, "We intend by the agreement to have this matter disposed of once and for all by this hearing and by this agreement."

■ We believe the record shows that the court correctly interpreted the provisions of the plea agreement and informed Whitehawk of its conditional terms. From this record we also conclude that Whitehawk must have understood the consequences of an unfavorable psychological examination or sentencing report.

■ Whitehawk has also argued that the court improperly denied his right to withdraw his plea under I.C.R. 11(d)(4). The pertinent section of I.C.R. 11(d)(4) states:

Rejection of a Plea Agreement. If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court, or, on a showing of good cause, in camera, that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw his plea,....

In the present case, however, Whitehawk's attempted application of this requirement is misplaced. The court did not reject the plea agreement offered. The terms of the agreement provided that if the court found Whitehawk to be pedophile or a danger to society, the court was not bound by counsels' recommendation and could impose any appropriate sentence. To do so was not a rejection of the plea agreement. The specific terms of the agreement granted the court this power. No rejection of the plea agreement occurred which would trigger the provisions of I.C.R. 11(d)(4).

■ Whitehawk next challenges the court ordered psychological examination report. At the sentencing hearing, when the state moved to have the psychological report of Dr. Dodson admitted and attached to the presentence investigation report, Whitehawk objected. Whitehawk argued to the court, as he does on appeal, that the report did not meet the requirements of I.C. § 19–2522. Under I.C. § 19–2522, when the mental condition of a defendant becomes a factor in sentencing and the court orders an examination of the defendant, the report of the examination is to include:

(a) A description of the nature of the examination;

(b) A diagnosis, evaluation or prognosis of the mental condition of the defendant;

(c) An analysis of the degree of the defendant's illness or defect and level of functional impairment;

(d) A consideration of whether treatment is available for the defendant's mental condition;

(e) An analysis of the relative risks and benefits of treatment or non-treatment;

(f) A consideration of the risk of danger which the defendant may create for the public if at large.

The sufficiency and admission of a psychological report are questions within the district court's discretion. The court did not abuse its discretion in considering Dr. Dodson's report. We interpret the report as satisfying these requirements of I.C. § 19–2522.

In *State v. Pearson*, 108 Idaho 889, 702 P.2d 927 (Ct.App.1985), we held that a report is not adequate if in its evaluation it presents merely conclusory or general statements unsupported by an explanation or evidence that an actual psychological evaluation occurred. Here, we are not confronted with such a cursory evaluation. The report presents a case history of Whitehawk, followed by a discussion of his condition with a final recommendation of incarceration by the reporting psychologist. The report is rather short, at four pages in length; however, it does contain a consideration of each factor listed in the statute.

We believe that this report, unlike the one in *Pearson*, contains an adequate explanation for the conclusions reached.

Finally, Whitehawk contends that the court abused its discretion when it imposed an indeterminate sixteen-year sentence. Whitehawk argues that the court failed to adequately consider his mental condition in sentencing as required by I.C. § 19–2523, and that the court gave inadequate consideration to his character and the circumstances of the crime. Under I.C. § 19–2523 a court is directed to examine a number of factors if a defendant's mental condition will bear a significance in sentencing.[1]

■ The district court's decision to sentence Whitehawk to an indeterminate sixteen-year term is one of discretion which we will not overturn if the sentence is within the statutory maximum, absent a showing of abuse. *State v. Adams*, 106 Idaho 309, 678 P.2d 101 (Ct.App.1984). A sentence may represent an abuse of discretion if it is shown to be unreasonable when viewed in light of the facts of the case. *State v. Nice*, 103 Idaho 89, 645 P.2d 323 (1982). In our evaluation of an exercise of sentencing discretion, we conduct an independent review of the record focusing on the nature of the offense and upon the character of the offender. *State v. Reinke*, 103 Idaho 771, 653 P.2d 1183 (Ct. App.1982).

Whitehawk's sentence was within the statutory maximum; he could have been sentenced to a life term. I.C. § 18–1508. In examining the character of Whitehawk, we note, as did the sentencing court, the severity of his mental disorders. In 1979 Whitehawk was the victim of a work-related accident which resulted in numerous permanent physical and mental impairments. These included certain cognitive and memory dysfunctions which left White-

hawk "neurologically functioning at the level of an eight-year old." Whitehawk received extensive physical rehabilitative therapy, as well as psychological examinations. Treatment of his condition involved medication to arrest seizures. The most recent psychological examinations established that Whitehawk's mental impairment constituted a factor in, but not a cause of, his criminal conduct. Partial memory loss alleged by Whitehawk was also determined not to be an explanation of his behavior. Whitehawk had no previous record involving similar crimes.

■ It is apparent from the record that the sentencing court did focus upon Whitehawk's mental condition. The court was concerned at the time Whitehawk entered his plea and at sentencing with the question of Whitehawk's condition, his impairment, and the issue of whether he posed a risk to society. These concerns are reflected in the conditional terms of the plea agreement. The specific purpose of the psychological examination and report was to help the court evaluate Whitehawk's mental condition, the possibility of rehabilitation, and the danger he might pose. These terms directly reflect the factors enunciated in I.C. § 19–2523. In addition to Dr. Dodson's report, the court considered a psychological evaluation that Whitehawk had obtained himself and a presentence investigation report. Each of them illustrates a clear focus upon Whitehawk's mental condition. It is obvious from the court's direct concern with the results of the psychological reports that the court considered Whitehawk's mental condition in sentencing. We note from the record that the court had an awareness and empathy for Whitehawk's mental condition and the associated difficulties of sentencing. We cannot conclude that the court

---

1. These include:
   (a) The extent to which the defendant is mentally ill;
   (b) The degree of illness or defect and level of functional impairment;
   (c) The prognosis for improvement or rehabilitation;
   (d) The availability of treatment and level of care required;
   (e) Any risk of danger which the defendant may create for the public, if at large, or the absence of such risk;
   (f) The capacity of the defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law at the time of the offense charged.

failed in its examination to consider those factors enumerated in I.C. § 19–2523.

The court in sentencing did place an emphasis upon Whitehawk's refusal to admit his involvement in the offense. The court stressed that probation would not be appropriate because of the danger Whitehawk posed and because any counseling likely would fail without Whitehawk's admission of complicity. It was determined that the objectives of sentencing, including the crucial question of rehabilitation, could not be met unless Whitehawk admitted his involvement. Given the court's belief that probation, absent effective counseling would not constitute a viable sentencing option, the court's concern was not inappropriate. Upon rejecting probation, the court chose a prison sentence lengthy enough to protect the victim and to protect society in general.

Having reviewed the record and having considered the sentence review criteria set forth in *State v. Toohill,* 103 Idaho 565, 650 P.2d 707 (Ct.App.1982), we conclude that the district court did not abuse its discretion. The judgment imposing the sentence is affirmed.

WALTERS, C.J., and BURNETT, J., concur.