793 P.2d 695

STATE of Idaho, Plaintiff–Respondent,

v.

**Lyle Edison WHITEHAWK,
Defendant–Appellant.**

No. 18293.

Supreme Court of Idaho.

May 23, 1990.

E. Lee Schlender, Chartered, Hailey, for defendant-appellant.

Jim Jones, Atty. Gen., Michael J. Kane, Deputy Atty. Gen., Boise, for plaintiff-respondent. Michael J. Kane argued.

JOHNSON, Justice.

This case was appealed from the trial court's judgment sentencing Whitehawk to imprisonment for an indeterminate term not to exceed sixteen years for the crime of lewd conduct with a minor child under the age of sixteen years. We assigned the case to the Court of Appeals, which issued an opinion affirming the sentence. *State v. Whitehawk*, 116 Idaho 827, 780 P.2d 149 (Ct.App.1989). We granted review based on Whitehawk's petition.

We have reviewed and considered the briefs, the record, the transcript, the exhibits, and the opinion of the Court of Appeals. We have also listened to and considered the oral arguments of the parties that were presented to us. Based on this review and consideration, we concur with the opinion of the Court of Appeals, but offer a further explanation as to the basis of the decision to affirm the sentence.

Because of its significance, we set forth below a copy of the plea bargain agreement. The handwritten additions to the agreement were added in open court before the agreement was signed by the prosecutor, the defense attorney and Whitehawk on the day Whitehawk pled guilty.

IN THE DISTRICT COURT OF THE SIXTH JUDICIAL DISTRICT OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF POWER

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| Plaintiff, | ) | Case No. 85-531 |
| v. | ) | I.C.R. STIPULATION AND AGREEMENT; PLEA AND SENTENCING |
| LYLE EDISON WHITEHAWK, | ) | |
| Defendant. | ) | |

COMES NOW the STATE OF IDAHO and the Defendant by HENRY R. BOOMER, Prosecuting Attorney of Power County, and E. LEE SCHLENDER, Attorney for Defendant LYLE EDISON WHITEHAWK and by Stipulation, pursuant to I.C.R. 11 and subsections thereof as herein stated, agree and state to the Court as follows:

1. That in the above-entitled action, the State of Idaho did file a Complaint charging the Defendant with

the crime of rape, I.C. §18-6101, §18-6104, on or about the 21st day of November, 1985, and the Defendant having thereafter been arraigned and bound over to the District Court for trial on said charge;

2.     Pursuant to I.C.R. 11(d)(1)(c), the parties hereby agree that a specific sentence is the appropriate disposition of this case subject to the terms and conditions as stated herein;

3.     That the Defendant shall enter a plea of guilty to violation of I.C. §18-6607; lewd conduct with a minor or child under the age of 16 years;

4.     That the Court shall impose a fine upon the Defendant of up to but not to exceed, the sum of $5,000.00;

5.     That the Court will enter a Withheld Judgment, entered pursuant to I.C.R. 33;

6.     Terms and conditions of probation shall be at the total discretion of the Court;

7.     That the Defendant shall be examined pursuant to I.C. §19-2522, by a psychiatrist or licensed psychologist;

8.     That the Court is entitled to consider mental condition of the Defendant pursuant to I.C. §19-2523 and subsections thereof. In the event the Court determines upon consideration of the sentencing report and any report submitted to this Court pursuant to I.C. §19-2522, that the Defendant presents a risk of danger to the public at large, the Court can refuse to accept

*Or is a pedaphelias*

this Agreement and sentence the Defendant the same as if this Agreement was entered into pursuant to I.C.R. 11(d)(I)(A), (C) or (D). *Further, that the prosecutor may the recommend any sentencing disposition that he desires.*

9. That the Defendant shall not be further jailed or incarcerated unless this Stipulation is void as per Paragraph 8;

10. That the Court may, upon its discretion, enter any Order of Restitution pursuant to I.C. §19-5304 as the Court deems just and proper.

DATED this __11__ day of December, 1986.

ATTORNEY FOR PLAINTIFF

Henry R. Boomer
Power County Prosecuting Attorney
in and for the State of Idaho

ATTORNEY FOR DEFENDANT

E. Lee Schlender

TERMS AND CONDITONS of the above are approved and accepted:

LYLE E. WHITEHAWK

The agreement was stated to be made pursuant to I.C.R. 11(d)(1)(C) (a (C) agreement). In a (C) agreement the prosecuting attorney and the attorney for the defendant agree to a plea bargain by which the defendant will plead guilty and the prosecuting attorney will "agree that a specific sentence is the appropriate disposition of the case." I.C.R. 11(d) (1987). Sections 4, 5 and 6 of the agreement state the elements of the specific sentence to which the parties agreed: a fine, a withheld judgment and probation.

Section 8 of the agreement authorizes the trial court to refuse to accept the agreement and sentence Whitehawk the same as if the agreement had been entered into pursuant to I.C.R. 11(d)(1)(A), (C) or (D). Subdivision (A) of I.C.R. 11(d)(1) contemplates the prosecuting attorney agreeing to dismiss other charges in exchange for a guilty plea; subdivision (D) contemplates the prosecuting attorney agreeing "to any other disposition of the case."

To fill out the picture here, we need to inject subdivision (B) of I.C.R. 11(d)(1). In a (B) agreement the prosecuting attorney agrees to make a recommendation for sentencing or not to oppose the defendant's request for a particular sentence, "with the understanding that such recommendation or request shall not be binding upon the court."

As we view the facts of this case, in light of these rules and of the colloquy between the trial court and Whitehawk at the time Whitehawk pled guilty, the trial court and the parties, in effect, treated sections 4, 5 and 6 of the agreement as a (B) agreement instead of a (C) agreement. This is the only meaning we can give to the statements of the trial court at the time the plea was tendered that Whitehawk would not be allowed to withdraw his plea after it was accepted. Not only did Whitehawk agree that he would not be allowed to withdraw his pleas, but both the prosecutor and the defense attorney confirmed this understanding. The Court of Appeals recited this colloquy. 116 Idaho at 828–29, 780 P.2d at 150–51.

We reach this conclusion because I.C.R. 11(d)(2) includes these provisions:

If the agreement is of the type specified in subdivision (d)(1)(A), (C) or (D), the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report. If the agreement is of the type specified in subdivision (d)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request the defendant nevertheless has no right to withdraw his plea.

I.C.R. 11(d)(2) (1987).

Only if the agreement is treated as a (B) agreement was it proper for the trial court to advise Whitehawk that he had no right to withdraw his plea if the trial court did not accept the sentence specified in sections 4, 5 and 6 of the agreement. Since the parties acquiesced in this treatment, we are unwilling to treat the agreement as a (C) agreement. The trial court was not bound by the sentencing recommendations of the (B) agreement and was not required to give Whitehawk an opportunity to withdraw his guilty plea.

With this explanation, we affirm the sentence based on the opinion of the Court of Appeals.

BAKES, C.J., and BOYLE and McDEVITT, JJ., concur.

BISTLINE, Justice, dissenting.

## I. THE PLEA BARGAIN AS CONTRACT

Pursuant to I.C.R. 11(d)(2), a trial court basically has only two options when faced with an (A), (C), or (D) plea agreement: The court can accept or reject the agreement. Even if the court decides to defer its decision until after it has considered the presentence report, it still has only those two options once that consideration is concluded. Modification of the agreement, or deciding to accept the plea but not the agreed upon disposition, is not an alternative if the agreement is a (C) agreement.

The agreement Whitehawk negotiated with the prosecutor was specifically a (C) agreement. Further, the parties agreed that even if the district court chose not to accept the agreed upon disposition, it could only sentence Whitehawk "the same as if this Agreement was entered into pursuant to I.C.R. 11(d)(1)(A), (C), or (D)." The meeting of the minds which took place and was incorporated in the written agreement *never* contemplated that the agreement could be converted to a (B) agreement.

The majority suggests, however, that because the parties "acquiesced" when the judge stated that Whitehawk would not be allowed to withdraw his plea, they thereby "acquiesced"[1] in the sense of agreeing to

---

1. "Acquiesce" and "agree" are not equivalent terms. To agree signifies a meeting of the minds. Not so with acquiesce. One who acquiesces simply does neither agree nor dispute, but responds by being quiet; to accept or com- ply passively, according to Webster's New Collegiate Dictionary. Black's Law Dictionary provides a similar definition. Acquiescence is to be distinguished from avowed consent, on the one hand, and from open consent or opposition on

the conversion of the (C) agreement into a (B) agreement. This assertion totally ignores all applicable principles of contract law, and thereby contradicts precedent in virtually every jurisdiction in the United States, including that of the Ninth Circuit and the United States Supreme Court.

"[A] plea bargain agreement is contractual in nature and subject to contract law standards." *United States v. Carrillo*, 709 F.2d 35 (9th Cir.1983); *see also Santobello v. New York*, 404 U.S. 257, 263, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971); *United States v. Krasn*, 614 F.2d 1229, 1233 (9th Cir.1980); *Cooper v. United States*, 594 F.2d 12 (4th Cir.1979). The agreement is between the government, acting through the prosecutor, and the defendant. *Id.* The trial court is not a party to su ʰ an agreement. Rather, it is the role of the trial court to *enforce* the agreement *as it was made* between the parties and to remedy any breach of the agreement by either party. *Id.; see also State v. Waiau*, 60 Haw. 93, 588 P.2d 412 (1978) (concern expressed for "preserving the independence of the trial judge from the plea bargaining process"); *People v. Santos*, 171 Cal.App.3d 67, 216 Cal.Rptr. 911 (2 Dist.1985); *State v. Hall*, 32 Wash.App. 108, 645 P.2d 1143 (1982). It is therefore clearly not the prerogative of the trial court to modify an agreement arising out of plea bargaining. What is true is that the court is not bound to accept it.

The signed, written plea agreement here at issue is set forth in its entirety as an appendix to the majority opinion. A review of that agreement shows *nothing* which indicates that the agreement had become or could become a (B) agreement, nor is there any statement on the face of the document to the effect that Whitehawk would not be allowed to withdraw his plea. This is true even though the modifications to the agreement were made and the agreement was signed during the course of the hearing at which the agreement was presented and Whitehawk changed his plea:

the other. It is much doubted that a defendant of decreased intelligence and without knowledge of criminal court proceedings ever consid-

MR. SCHLENDER: Your Honor, I think possibly we should add at this time that the plea of guilty is entered into pursuant to a stipulation and agreement so that it isn't a guilty plea without the background of negotiations with the prosecuting attorney, and we do have a written agreement prepared.

MR. BOOMER: I have some proposed modifications to that, I think they're consistent with our understanding, but I should get those on the record, too, Your Honor.

THE COURT: Let's do that now.

MR. BOOMER: I take it the Court has a copy of the—or perhaps the original of the proposed agreement entitled I.C.R. Stipulation and Agreement; Plea and Sentencing?

THE COURT: It's in the file here somewhere I suppose.

MR. BOOMER: Here's a copy, Your Honor, (handing to the court).

THE COURT: Thank you.

MR. BOOMER: Your Honor, I guess before we proceed any further I would like to propose the following changes: Paragraph 3, Page 2, minor technical change, the code section cited there, 18–6607, has been amended to Idaho Code 18–1508. The old code for this charge used to be 6607, it's now 1508.

THE COURT: Do you have any objection to that amendment?

MR. SCHLENDER: None, Your Honor.

MR. BOOMER: Also, in Paragraph 8, Your Honor, where it says that if the Court determines upon consideration of the sentencing report and any reports submitted to the Court concerning mental condition that the defendant presents a risk of danger to the public at large, I'm okay up to those words, but I think the additional words should be added, 'and/or is a pedophiliac,' *the Court can refuse to accept this agreement* and sentence the defendant, et cetera.

ers himself in a position to tell a black-robed presiding judge that he opposes what the judge has just told him is about to happen.

THE COURT: Do you have any objection to that, Mr. Schlender?

MR. SCHLENDER: No, Your Honor.

MR. BOOMER: Finally, Your Honor, at the end of Paragraph 8 I would propose—I guess this modifies Paragraph 8 further, that the prosecutor may recommend any disposition that he desires, and that's with the understanding that that would be in the event that the Court determines that based upon the sentencing report and mental report that he presents a danger to the public at large and/or is a pedophiliac.

MR. SCHLENDER: Hank, why don't you just pen in those changes on your copy if you have a pen and then I'll sign it.

MR. BOOMER: I've done that in pencil.

THE COURT: Well, why don't you use mine. I've penciled in the changes on Page 2, and then pencil in the changes with a pen on Page 3, and then you guys can sign that as the original.

MR. BOOMER: (Complies.) Your Honor, before we conclude I would like to be permitted to—

THE COURT: For the record state what changes you made.

MR. BOOMER: At the end of Paragraph 8 it would be further that the prosecutor may then recommend any sentencing disposition that he desires. I think that's word for word, isn't it?

MR. SCHLENDER: We have no objection to that, Your Honor. I think what Mr. Boomer is saying is *in the event that the Court deemed that this agreement would not be binding,* that all recommendations are withdrawn and you could make whatever recommendations you desire.

MR. BOOMER: Yes, that's my understanding of the agreement.

MR. SCHLENDER: *Here, Lyle, sign this right there (indicating).*

THE DEFENDANT: *(Complies.)*

MR. SCHLENDER: Hank, do you want to sign that and give it to the Court?

MR. BOOMER: Your Honor, before signing this agreement I would like to ask a few questions of counsel and the defendant if I could be permitted.

THE COURT: Yes.

MR. BOOMER: My understanding, Mr. Schlender, and correct me if I'm wrong, is that this guilty plea once entered could not and would not be withdrawn in the event that the Court decides, based upon Paragraph 8 and the other terms and conditions herein, decides to ignore or disregard the recommendations that, as has been noted, are contingent upon the findings in the presentence examination.

MR. SCHLENDER: Perhaps the record should show that that sort of inquiry, I feel uncomfortable with it coming from the State. I would rather have it come from the Judge. Assuming it was a question of the Court, the answer is that you're correct. We intend by this agreement to have this matter disposed of once and for all by this hearing and by this agreement.

And in furtherance of that, I would like to ask Lyle a few questions and have something marked into evidence, which is the medical records, and establish some background for the plea of guilty which I think would be of assistance to the Court.

THE COURT: All right.

MR. SCHLENDER: Thank you, Judge.

That will be Exhibit 1 (indicating).

Tr. 14–18 (emphasis added).

"Only if a contract is reasonably subject to conflicting interpretation may [an appellate court] find it to be ambiguous. *International Engineering Co. v. Daum Industries, Inc.,* 102 Idaho 363, 365, 630 P.2d 155, 157 (1981)." *Spencer–Steed v. Spencer,* 115 Idaho 338, 345, 766 P.2d 1219, 1226 (1988). The plea agreement is clear and unambiguous as to this material term: The agreement is a (C) agreement, or in the alternative it is an (A), (C), or (D) agreement. By its terms it is *not* a (B) agreement, nor could it be converted into a (B) agreement.

"The court should not make the contract for the parties or interpret it to mean something which *it in itself* does not contain. [Citations omitted.]" *Miller v. Remion,* 86 Idaho 121, 127, 383 P.2d 596, 599 (1963) (emphasis added).

The majority's analysis of this case totally ignores these principles of contract law in ruling that a trial court can modify a written, signed plea agreement. Under the terms of the agreement, the trial court could accept or reject the agreement, period. It could *not* change a material term of the agreement by making it a (B) rather than a (C) agreement, thereby preventing Whitehawk from withdrawing his plea. Whitehawk made an agreement with the prosecutor. That agreement contemplated that if the terms of the disposition changed radically, Whitehawk would be able to withdraw his guilty plea under I.C.R. 11(d)(1)(A), (C), or (D). Despite case law which holds that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise *must be fulfilled,*" *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971) (emphasis added), within the course of a minute or two, it turns out, the trial court was able to bring about with impunity an abrogation of the agreement between Whitehawk and the prosecutor. In sequence both the Court of Appeals and a majority of this Court turn a blind eye to this flagrant misapplication of axiomatic contract principles, thereby doing great damage to the plea bargaining process which is vital to the efficient operation of our criminal justice system. If any plea agreement can be converted to a (B) agreement through the unilateral action of a trial court and the "acquiescence" of the parties, what defendant's counsel would advise a client to enter such a plea, knowing that it could not be withdrawn even if the state's part of the bargain remains unfulfilled? Not counsel with good sense and the client's best interests at heart. The Court's decision today serves no one well, not even the Court itself.

## PART II. VOLUNTARY, KNOWING, AND INTELLIGENT PLEA

Plea bargaining is an acceptable practice only when the defendant's guilty plea is entered voluntarily, knowingly, and intelligently. *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *State v. Colyer,* 98 Idaho 32, 557 P.2d 626 (1976). Where "the trial judge entertains or should have reasonably entertained a good-faith doubt as to the competence of the defendant to understand the consequences of his plea or to participate intelligently in the proceedings including his ability to make a reasoned choice among alternatives presented to him," the defendant's right to due process demands that the trial judge hold a hearing on the defendant's competency to enter a plea of guilty. *State v. Fuchs,* 100 Idaho 341, 346–47, 597 P.2d 227, 232–33 (1979). The trial court should have held such a hearing in this case.

Whitehawk has an intelligence quotient of only 85 (Tr. at 203), and " 'he is neurologically functioning at the level of an eight-year-old" (Tr. at 20). He also suffers from severe short term memory loss (Tr. at 20–21). In addition, he had been on various levels of phenobarbital, a barbiturate, for several years, up to and including the date of the hearing on his change of plea (Tr. at 43–50). That medication was neurologically toxic to Whitehawk (Tr. at 49–50; 58–59) and had the potential to affect his ability to think and reason (Tr. at 50; *see also* Tr. at 53—evaluation after phenobarbital was discontinued would be necessary to assess how Whitehawk was "functioning cognitively"). Given such a reduced mental capacity, it is certainly not in the interests of justice to assume that Whitehawk voluntarily, knowingly, and intelligently assented to a change in his plea bargain which would hold him to his plea regardless of the sentence imposed.

### III.

The question of whether Whitehawk's plea was entered knowingly and intelligent-

ly cannot be viewed in isolation from the contractual issue discussed earlier. The majority's decision hinges on an alleged modification of the plea agreement to which Whitehawk apparently "acquiesced." As has already been demonstrated, a contractual modification would be questionable even if the defendant were a person of normal intelligence who was not under the influence of any mind-altering drug. When it is reviewed in light of Whitehawk's dubious mental capacity, the majority's acceptance of the trial court's manipulation of the plea agreement is wholly unacceptable.

The trial court had two options: to accept or reject the plea agreement. It did neither. Instead, it modified a material term of the agreement, despite Whitehawk's dubious capacity to "acquiesce." Then, at the later sentencing hearing, the trial court bound Whitehawk to the modified contract term and summarily ignored the rest of the agreement. The majority's unquestioning acceptance of this conduct is unfathomable. As it cannot be fathomed, it should be rejected. Either Whitehawk's plea agreement should be specifically enforced, or he should be allowed to withdraw his guilty plea.